[Cite as *State v. Schuster*, 2015-Ohio-4818.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NOS. CA2015-05-040 |
| Plaintiff-Appellee, | : | CA2015-05-041 |
| | : | O P I N I O N |
| - vs - | | 11/23/2015 |
| | : | |
| GARY JAY SCHUSTER, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case Nos. 2014-CR-000383, 2014-CR-000572


D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

Schuh & Goldberg, LLP, Brian T. Goldberg, 2662 Madison Road, Cincinnati, Ohio 45208, for defendant-appellant


**PIPER, P.J.**

{¶ 1} Defendant-appellant, Gary Schuster, appeals his convictions and sentence in the Clermont County Court of Common Pleas for operating a motor vehicle under the influence (OVI), possession of drugs, and tampering with evidence.

{¶ 2} On a June night in 2014, Officer Terrence Kresser of the Union Township Police Department responded to a call that a fight was occurring at a local bar, Frank and Jamie's. As Officer Kresser entered the parking lot, he saw a silver car driving toward him

with its trunk open. After turning in front of the officer, the vehicle stopped, and Officer Kresser observed Schuster exit the driver's-side door of the car. Schuster walked to the back of the car, near the trunk, and waited for Officer Kresser to meet him. During this time, the car's owner was in the backseat of the car, and another passenger was located in the front passenger seat.

{¶ 3} Officer Kresser approached the rear of the car, and noticed that Schuster showed signs of assault, including blood on his forehead. Schuster claimed that a bar fight had occurred at Frank and Jamie's, and that he was assaulted while trying to stop the front seat passenger from being assaulted. Schuster told Officer Kresser that he got into the backseat of the car after leaving the bar, and saw a woman approach and attack the front-seat-passenger. Schuster claimed that he reached into the front seat to protect the front-passenger, and that as a result, he "flopped" into the front seat. Schuster denied ever operating the car, or even touching its steering wheel.

{¶ 4} Officer Kresser patted Schuster down for weapons, and while in close proximity to him, smelled an odor of an alcoholic beverage coming from Schuster's person. After Officer Kresser noticed that Schuster could not maintain his balance, he asked Schuster to perform several field sobriety tests, which Schuster refused to perform. Officer Kresser detained Schuster, and took him to the police station where Schuster eventually submitted to a breath test. The results of the breath test indicated that Schuster's blood alcohol content was .114.

{¶ 5} Schuster was detained in an interview room, and during that time, placed a phone call to his friend, who is also the son of the woman who was in the front seat of the car Schuster was seen exiting. Schuster, who was recorded while in the interview room, asked his friend to remove items he put in the trunk of the car earlier that night when he saw Officer Kresser approaching.

- 2 -

{¶ 6} Meanwhile, the car's owner was questioned by police. Once his interview was complete, the car's owner returned to Frank and Jamie's to retrieve his car. Schuster's friend, who was also a mutual friend of the car's owner, went with the owner to retrieve the car. Once in the parking lot of Frank and Jamie's, the two men opened the trunk of the car. There, the men located pills, marijuana, money, and rolling papers. The owner called the police and asked them to retrieve the items from his trunk.

{¶ 7} Officer Jeffrey Joehnk, also of the Union Township Police Department, responded to the owner's call, and retrieved the items from the trunk. Officer Joehnk, who had responded earlier to the bar-fight incident, located the items the owner described during his call, including a supply of small blue pills. Officer Joehnk thought the pills might be Clonazepam, and called poison control to discuss the possibility that the blue pills were a controlled substance. Poison control indicated that the small blue pills, marked with 2531 on one side and a swan-shaped "V" on the other, could be Clonazepam. However, not knowing for sure what the pills were, Officer Joehnk sent the pills for laboratory testing.

{¶ 8} Schuster, whose arrest occurred on June 17, 2014, was indicted on July 22, 2014 for two counts of OVI with a repeat OVI offender specification, and one count of driving under suspension. Schuster was not released on bail, and instead, remained incarcerated since the time of his arrest. On September 25, 2014, and while still incarcerated, Schuster was indicted on separate counts of tampering with evidence and possession of drugs. These charges were brought once the state received confirmation via laboratory testing that the blue pills were, in fact, the controlled substance Clonazepam. Schuster pled not-guilty to all of the counts.

{¶ 9} Schuster was appointed counsel, and at various times before his trial, executed limited speedy trial waiver forms to authorize continuances. Some of the forms were signed by Schuster, and some were signed by Schuster's counsel. Schuster had disagreements

with his appointed counsel on several occasions, and he was appointed different counsel multiple times during the pretrial phase. Twice, Schuster's newly-appointed counsel moved the trial court to dismiss the indictments because of speedy trial issues. However, the trial court denied the first motion, and the second was withdrawn by Schuster's counsel given the trial court's denial of the first motion.

{¶ 10} The matter proceeded to a three-day jury trial. Despite subpoenaing several witnesses in his defense, only a few of the witnesses appeared on the first day of trial, and even less appeared on the third day of the trial when the defense presented its case-in-chief. The trial court held a discussion with the parties regarding the fact that the witnesses did not appear, and Schuster's counsel indicated that she had made a mistake by not subpoenaing the witnesses for all three days of the trial. Nevertheless, Schuster declined the trial court's offer to compel the witnesses, stating that he did not want the witnesses to get "in trouble" by virtue of a bench warrant or citation. Three witnesses then testified on behalf of Schuster.

{¶ 11} The jury found Schuster guilty on all counts. However, the trial court granted Schuster's motion for acquittal for the driving under suspension conviction because Schuster only drove in the parking lot of Frank and Jamie's, rather than on the public roads. The trial court sentenced Schuster to eight years for the OVI and specification, two years for tampering with evidence, and one year for possession. The trial court ordered the tampering and possession sentences to be run concurrent with each other, but consecutive to the OVI and specification sentences for an aggregate ten-year sentence. Schuster now appeals his convictions and sentence, raising the following assignments of error.

{¶ 12} Assignment of Error No. 1:

{¶ 13} THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. SCHUSTER IN DENYING HIS MOTION TO DISMISS BOTH INDICTMENTS BECAUSE THE STATE FAILED TO COMPLY WITH THE TIME LIMITATIONS OUTLINED IN R.C. 2945.71, AND

THE DUE PROCESS PROVISIONS OF THE UNITED STATES AND OHIO CONSTITUTIONS.

{¶ 14} Schuster argues in his first assignment of error that the trial court erred in not granting his motion to dismiss because his right to a speedy trial was violated for each set of charges brought against him.

{¶ 15} A criminal defendant has a fundamental right to a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. *State v. Ramey*, 132 Ohio St.3d 309, 2012-Ohio-2904, ¶ 14. "States have the authority to prescribe reasonable periods in which a trial must be held that are consistent with constitutional requirements." *Id.* Ohio has exercised this authority by enacting R.C. 2945.71, which designates specific time requirements within which the state must bring an accused to trial.

{¶ 16} R.C. 2945.71(C)(2) provides that a person charged with a felony must be brought to trial within 270 days after his arrest. According to R.C. 2945.71(E), for purposes of calculating speedy-trial time, "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." As such, and subject to certain tolling events, a jailed defendant must be tried within 90 days. A defendant not brought to trial within the relevant time constraints "shall be discharged." R.C. 2945.73(B). However, R.C. 2945.72(H) provides that the time within which an accused must be brought to trial may be extended for "the period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion."

{¶ 17} Moreover, a criminal defendant may waive speedy trial rights. *Ramey*, 2012-Ohio-2904 at ¶ 18. "To be effective, an accused's waiver of his or her constitutional and statutory rights to a speedy trial must be expressed in writing or made in open court on the

record." *State v. King*, 70 Ohio St.3d 158 (1994), syllabus. A defendant's express written waiver of his statutory rights may also constitute a waiver of the coextensive speedy trial rights guaranteed by the United States and Ohio Constitutions. *State v. O'Brien*, 34 Ohio St.3d 7 (1987), paragraph one of the syllabus.

{¶ 18} "A defendant is bound by his counsel's waiver of speedy trial rights, even though the waiver might have been executed without his consent." *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, ¶ 33. As such, trial counsel has "the authority to execute the waivers of time provisions for the purpose of trial preparation" even absent the client's approval. *State v. McBreen*, 54 Ohio St.2d 315, 319 (1978).

{¶ 19} Appellate review of speedy-trial issues involves a mixed question of law and fact. *State v. Riley*, 162 Ohio App.3d 730, 2005-Ohio-4337, ¶ 19 (12th Dist.). The appellate court must defer to the trial court's findings of fact if those findings are supported by competent, credible evidence, but the appellate court must independently review whether the trial court properly applied the law to those facts. *Id.*

## First Set of Charges

{¶ 20} The record demonstrates that Schuster was not denied his right to a speedy trial as it relates to the OVI and accompanying multiple offender specification. The record contains multiple limited written waivers and continuances that continued the trial for a specified date range. These limited waivers were signed by either Schuster or his trial counsel, and effectively tolled the speedy-trial clock each time they were executed.

{¶ 21} While Schuster argues on appeal that the waivers were invalid because he was opposed to any continuances or delays, the record contains two waivers signed by Schuster himself, and Ohio law is clear that Schuster is bound by the waivers executed by his counsel so long as they were made for trial preparation. There is no indication in the record that the

waivers were made for any reason other than to permit Schuster's counsel to prepare for trial. This is especially true where Schuster changed counsel multiple times while awaiting trial. The trial court specifically noted the importance of providing counsel adequate time to prepare Schuster's defense, and the continuances executed by Schuster's counsel were valid.

{¶ 22} Furthermore, a review of the record shows no indication that Schuster ever objected to the waivers or continuances once they were executed. At one hearing, and when Schuster suggested that he never intended to waive his speedy trial rights, the trial court stated, "you came out many times and never said boo." Likewise, during one hearing, Schuster's counsel stated, "any time that I have waived on this case I got Mr. Schuster's go ahead or his okay in advance." As such, the limited time waivers were valid, and tolled Schuster's speedy trial rights.

{¶ 23} In total, and once the waivers and other tolling event of Schuster requesting discovery are taken into consideration, the state brought Schuster to trial on the 84th day after his arrest. Thus, the state brought Schuster to trial within the 90-day time requirement, and Schuster's speedy trial rights were not violated.

**Second Set of Charges**

{¶ 24} We also find that Schuster was brought to trial within 90 days of being indicted for the second set of drug possession and tampering with evidence charges. We begin by determining that the second set of charges was separate and apart from the OVI related charges and therefore had a different 90-day timeframe than the first set of charges. *State v. Baker*, 78 Ohio St.3d 108 (1997).

{¶ 25} In *Baker,* the Ohio Supreme Court addressed cases involving multiple indictments, and determined that "subsequent charges made against an accused would be subject to the same speedy-trial constraints as the original charges, if the additional charges

arose from the same facts as the first indictment." *Id.* at 110. If, however, the subsequent charges arise from new and additional facts, unknown at the time of the original arrest, the state is not bound to the speedy trial timetable of the original arrest and may be afforded a new speedy trial period. *Id.* at 111-112.

{¶ 26} The record is clear that Schuster was arrested on the first set of charges on June 17, 2014, but was not indicted on the second set of charges until September 25, 2014. The state did not bring the second set of charges on the same day as they charged Schuster with OVI because the state did not know whether the blue pills found in the trunk after Schuster's arrest were a controlled substance, and if so, what type of controlled substance Schuster hid in the trunk. Only after the state received confirmation from laboratory testing that the pills were in fact Clonazepam did it bring the second set of charges. Therefore, the second set of charges arose from new and additional facts that were unknown at the time of the original arrest for the OVI related offenses, and a new speedy trial date applied.

{¶ 27} Schuster argues that the drug-related charges were not new and separate from the OVI-related offenses because the police discovered the pills on the same night as they arrested him for the OVI-related charges and knew the pills were a controlled substance from information received from poison control. However, and as previously stated, the state did not have confirmation that the pills were truly a controlled substance on the night of Schuster's arrest, and such confirmation only came approximately two months later when the state received the lab report.

{¶ 28} This court has previously found that lab reports confirming the chemical makeup of a substance constitute new facts not available to the state at the time of the original arrest regardless of an officer's belief as to whether a pill is a controlled substance. *State v. Redelman*, 12th Dist. Clinton No. CA2012-04-010, 2013-Ohio-657. In *Redelman*, we recognized that multiple Ohio courts have held that although an arresting officer may have

- 8 -

*suspected* a certain type of contraband at the time of the arrest, a subsequent laboratory report confirming those suspicions is nevertheless an additional fact not known to the state at the time the original charges were filed. *State v. Brown*, 10th Dist. Franklin No. 12AP-292, 2012-Ohio-5903, ¶ 13; and *State v. Armstrong*, 9th Dist. Medina No. 03CA0064-M, 2004-Ohio-726. We agreed with the Eleventh District Court of Appeals and its finding that although the state "may have had a *good idea* that the substance [seized] was cocaine prior to the analysis date, they did not know *for sure* until the substance was analyzed," so that subsequent drug charges had a separate speedy trial date range than original charges. (Emphasis added.) *State v. Clark*, 11th Dist. Nos. 2001-P-0031, 2001-P-0033, 2001-P-0034, 2001-P-0057, and 2001-P-0058, 2004-Ohio-334, ¶ 73.

{¶ 29} This case is also similar to *State v. Riley*, 12th Dist. Clermont No. CA99-09-087, 2000 WL 745300, *2 (June 12, 2000). In *Riley*, we found that the two charges against the appellant stemmed from different sets of facts, resulting in two different speedy trial dates. Riley was charged with drunk driving after an officer suspected that Riley was intoxicated, and performed a stop. Once the officer confirmed that Riley was intoxicated, and after Riley was taken into custody, the officer searched Riley's car and found a glass vial and a small plastic bag, both of which contained a white powder. After touching the powder, the officer's hand became numb, which caused him to speculate that the powder was cocaine. Although the officer suspected that the white powder might be cocaine, that fact was not confirmed until the state received the results from laboratory testing. This court determined that Riley's two charges arose out of different, albeit related, investigations or searches because "the possession charge ultimately resulted out of an operative fact not present as to the DUI charge: the testing of the white powder and its confirmation as cocaine." *Id.* at *2.

{¶ 30} Despite the officer's suspicion on the night Schuster was arrested that the pills were a controlled substance, the state did not know for sure until the pills were analyzed and

confirmed to be Clonazepam. Moreover, the information from poison control was not enough to guarantee that the pills were, in fact, a controlled substance where Officer Joehnk testified that on the night he called poison control, it gave its "best recollection of what they think that pill is. They'll go off of the drug ID book, essentially, and plugging the features in, it will come up with what the - - the pill is." While poison control was able to suggest what the pill may have been, there was no guarantee. As such, the lab report represented a new fact otherwise unknown to the state on the night of Schuster's arrest. Therefore, the second indictment date of September 25, 2014 marked the beginning of a different speedy trial time-frame for the second set of charges.

{¶ 31} The record contains multiple waivers, specific to the second set of charges, in which Schuster waived a definite number of days each time he or his counsel executed the waiver. Much like the first set of charges, Schuster may not have signed every waiver form or agreed to the continuances, but he is bound by his counsel's waivers. Again, and like the first set of charges, each continuance was in writing and there is no indication that the continuances were for any purpose other than preparing for trial. When calculating the number of days charged against the state before Schuster was brought to trial, the total number of days where Schuster did not waive his speedy trial rights was 39 days. As such, the state brought Schuster to trial within the statutory 90-day limit.

{¶ 32} Having found that Schuster was not denied his right to a speedy trial in regard to either set of charges, his first assignment of error is overruled.

{¶ 33} Assignment of Error No. 2:

{¶ 34} THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. SCHUSTER'S SIXTH AMENDMENT RIGHTS BY ENTERING JUDGMENT OF CONVICTION AFTER A TRIAL AT WHICH APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL FOR HIS DEFENSE.

{¶ 35} Schuster argues in his second assignment of error that he received ineffective assistance of counsel because his counsel failed to properly subpoena witnesses on his behalf.

{¶ 36} The United States Supreme Court established a two-part test in regard to ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). That test requires an appellant to establish that first, "his trial counsel's performance was deficient; and second, that the deficient performance prejudiced the defense to the point of depriving the appellant of a fair trial." *State v. Myers*, 12th Dist. Fayette No. CA2005-12-035, 2007-Ohio-915, ¶ 33. Regarding the first prong, an appellant must show that his counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The second prong requires appellant to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

{¶ 37} Schuster argues that his counsel was ineffective for subpoenaing witnesses for the first day of trial, rather than for the entire three-day trial. The record indicates that Schuster's defense counsel subpoenaed several defense witnesses for the first day of trial. Of those subpoenaed, some were never served because the sheriff was unable to locate them, two were served but did not testify, and two ultimately testified. The record indicates that four witnesses appeared on the first day of trial, two of whom also appeared for the third day of trial. There is no dispute that Schuster's attorney admitted to making a mistake by not including the second or third day of the trial on the subpoenas. Even so, Schuster is unable to demonstrate that the mistake made by his trial counsel had an impact on the results of his trial.

{¶ 38} There is no indication in the record that the witnesses would have appeared, even if they had been subpoenaed for all three days of the trial. The record indicates that

Schuster's trial counsel directly instructed the witnesses who appeared on the first day of the trial to return on the last, and also telephoned the witnesses to instruct their appearance. Defense counsel also prepared another subpoena for a witness who appeared on the first day of trial, so that the witness would re-appear on the subsequent days of trial. The record also indicates that the trial court suspended the proceedings multiple times to permit Schuster's trial counsel to locate witnesses, and also took time out from the trial to allow a witness to come from work.

{¶ 39} Moreover, the trial court explained what it could do to compel the witnesses on Schuster's behalf, including finding them in contempt or citing them, but Schuster, himself, specifically stated that he did not want any of the witnesses to be "in trouble." As such, the trial court did not take any steps to compel the attendance of witnesses because of Schuster's personal statement that he did not want the witnesses to be in trouble for their refusal to appear. However, and even if Schuster had requested the trial court compel the witnesses, there is no indication that the witnesses' appearance would have resulted in Schuster being acquitted.

{¶ 40} Schuster offers no explanation as to how the results of his trial would have been different had his trial counsel subpoenaed the witnesses for each day of the trial, rather than only requiring their attendance on the first day of trial. While Schuster now claims in his brief that it would "not be fair" to speculate how the witnesses would have testified or if they would have helped him, the legal standard imposed by the Supreme Court and ingrained in Ohio jurisprudence is that Schuster must demonstrate that but for the deficient conduct by his trial counsel, the results of his trial would have been different.

{¶ 41} There is no indication in the record that any of the witnesses subpoenaed by Schuster would have added any information that was not already elicited through the testimony of other witnesses. For example, when asked about what specific witnesses would

- 12 -

testify to, Schuster's counsel was unable to pinpoint what the testimony would be, and instead stated that the witnesses would not "help at all" because no witness was able to testify as to whether Schuster was driving that night. The record suggests that the witnesses Schuster now asserts were integral to his defense only witnessed the fight at Frank and Jamie's, but could not otherwise testify that Schuster did not drive the car that night.

**{¶ 42}** Moreover, Schuster, himself, told the trial court that in regard to one of the witnesses, "we didn't really need her," and that the other witnesses were to serve as character witnesses. At no time did Schuster indicate that any of the witnesses who were subpoenaed would or could testify that Schuster was not driving that night. Also, throughout the discussion, the record indicates that some of the testimony that may have been elicited from the people who did not honor the subpoenas, for example, that Schuster had a hat with him when he was at Frank and Jamie's that night, could be elicited from witnesses who appeared at the trial.[1] In fact, Schuster's sister testified that he had a hat on the night of the incident, and that he left her house with it before going to Frank and Jamie's.

**{¶ 43}** Schuster has failed to indicate in any manner what would have been different had more witnesses testified on his behalf or that he would have been acquitted had his trial counsel extended the subpoenas to the second and third days of trial. The witnesses who did appear on the third day testified only that the fight occurred at Frank and Jamie's as Schuster indicated, and that Schuster was seen trying to protect the front-seat passenger. However, Schuster never once indicated that any witness he subpoenaed could testify that someone other than himself was driving the car that night. As such, Schuster has failed to

---

1. The hat's significance goes to an officer's identification of Schuster as the driver. During the state's case-in-chief, an officer testified that he saw Schuster drive the silver car that night, and when asked to describe the driver, the officer stated that the driver was an older, bald man and then made an in-court identification of Schuster as the man he saw driving that night. An aspect of Schuster's defense was that it could not have been him driving because he was wearing a hat so that the officer would not have known that he is balding.

demonstrate that his trial counsel was ineffective for including the second and third days of the trial on the witnesses' subpoenas. Having found that Schuster did not receive ineffective assistance of counsel, his second assignment of error is overruled.

{¶ 44} Assignment of Error No. 3:

{¶ 45} THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. SCHUSTER BY ENTERING A CONVICTION AND SENTENCING HIM UNDER THE SPECIFICATION FOR REPEAT OVI OFFENDERS. THE SPECIFICATION IS UNCONSTITUTIONAL AS IT VIOLATES THE DUE PROCESS AND EQUAL PROTECTION CLAUSES OF THE UNTIED STATES AND OHIO CONSTITUTION.

{¶ 46} Schuster argues in his third assignment of error that the OVI multiple offender specification set forth in relevant Ohio statutes is unconstitutional.

{¶ 47} The record indicates that Schuster was charged with OVI, as well as a repeat offender specification because he had previously committed OVI five or more times within the last 20 years. Schuster asserts that the statute permitting the specification is unconstitutional because it increases the penalty for one who commits OVI without first requiring the state to carry its burden of proof as to the previous OVI convictions.

{¶ 48} However, and as recognized by Schuster, this court has unequivocally determined that the OVI repeat offender specification is constitutional and does not violate due process. *State v. Hartsook*, 12th Dist. Warren No. CA2014-01-020, 2014-Ohio-4528; and *State v. Burkhart*, 12th Dist. Clermont No. CA2015-01-004, 2015-Ohio-3409. We stand by our analysis of this issue as set forth in these prior cases, and decline Schuster's invitation to revisit this issue. As such, Schuster's third assignment of error is overruled.

{¶ 49} Assignment of Error No. 4:

{¶ 50} THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW AND/OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN APPELLANT'S

CONVICTIONS FOR ASSAULT ON A PEACE OFFICER AND OBSTRUCTING OFFICIAL BUSINESS.  [sic][2]

**{¶ 51}** Schuster argues that his convictions are against the manifest weight of the evidence and were otherwise not supported by sufficient evidence.

**{¶ 52}** When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction.  *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298.  "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *State v. Crockett*, 12th Dist. Fayette No. CA2014-08-018, 2015-Ohio-1765, ¶ 18.

**{¶ 53}** A manifest weight challenge examines the inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other.  *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298.  When determining whether a conviction is against the manifest weight of the evidence, the court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  *State v. Cummings*, 12th Dist. Butler No. CA2006-09-224, 2007-Ohio-4970, ¶ 12.

**{¶ 54}** While appellate review includes the responsibility to consider the credibility of

---

2. Schuster's assignment of error makes reference to two crimes that were not charged in his case.  However, throughout the body of the argument section of the brief, he correctly addresses the crimes for which he was charged and convicted.  It is within this court's discretion to address the arguments raised in the body of the brief, and we will do so where it is obvious from the brief that the assigned error is specific to whether Schuster's convictions were valid.

witnesses and the weight given to the evidence, "these issues are primarily matters for the trier of fact to decide since the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given the evidence." *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. Therefore, an appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances to correct a manifest miscarriage of justice, and only when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

**OVI Conviction**

**{¶ 55}** Schuster was convicted of OVI and the accompanying specification that Schuster was convicted more than five times for OVI in the past 20 years.[3] According to R.C. 4511.19(A)(1)(a), "No person shall operate any vehicle * * * within this state, if, at the time of the operation, * * * the person is under the influence of alcohol, a drug of abuse, or a combination of them."

**{¶ 56}** During trial, the state presented evidence that Schuster operated the vehicle while under the influence of alcohol. Officer Kresser testified that when he responded to the 911 call about the fight at Frank and Jamie's, he observed a silver car being driven with its trunk open, and that the car turned abruptly to avoid a collision with his police cruiser. Officer Kresser testified that "as soon as the car stopped," Schuster exited the front driver's-side door. Without having any questions posed to him, Schuster told Officer Kresser that he was not driving the car. However, Officer Kresser testified that despite Schuster's claim that he was not the driver, "there was no way possible from the time frame that I exited my vehicle till I made it to his vehicle that somebody could have moved inside the vehicle" to act as driver.

---

3. Schuster was convicted of two counts of OVI, which were merged for purposes of sentencing. The judgment entries for Schuster's prior OVI convictions were entered into evidence, and he does not challenge the specification aspect, except for its constitutionality, as raised in his third assignment of error.

{¶ 57} Officer Kresser testified that when he approached Schuster and performed a pat-down for weapons, he noticed a "strong" odor of an alcoholic beverage coming from Schuster's person and that Schuster was not able to maintain his balance. During their conversation, Officer Kresser also observed that Schuster had glassy eyes, slurred speech, and was mumbling. Schuster, who admitted to Officer Kresser that he had been drinking that night, refused to perform field sobriety tests.[4] However, Schuster ultimately submitted to a breath test, which indicated that his blood alcohol content was .114, which is above the legal limit in Ohio.

{¶ 58} The state also presented the testimony of the car's owner, who indicated that he was in Frank and Jamie's when the fight erupted, and that the fight involved his female companion. At some point, Schuster approached the situation and tried to help the female companion rid herself of the attackers. The owner testified that he tried to call a cab to take him and his companion away from the bar, but during the phone call, Schuster approached him, took the keys to his car, and got into his car. The owner and his female companion followed Schuster, and the woman got in the front passenger seat of the owner's car, while the owner entered the backseat. The owner testified that Schuster got into the driver's side of the car, drove forward, and then stopped when the police arrived on the scene. During cross-examination, the owner testified that "no one was in the backseat but me."

{¶ 59} Officer Joehnk testified that he responded to the initial dispatch regarding the fight at Frank and Jamie's and during that time, he saw the silver car from behind. Officer Joehnk testified that he observed the rear lights of the car indicate that the car, which had once been moving, was placed in "park." When asked how long it took Schuster to exit the

_____

4. Officer Jeffrey Joehnk also testified, and his account of speaking with Schuster is very similar to Officer Kresser's in that Officer Joehnk recalled that Schuster had glassy, blood shot eyes, there was a strong odor of an alcoholic beverage coming from Schuster's person, and Schuster admitted to being "drunk" that night. Schuster also admitted during his testimony that he was "drunk" on the night of the incident.

car after the car went into park, Officer Joehnk testified, "it was instantaneous."

**{¶ 60}** The state also called another officer from the Union Township Police Department, Chris Holden, who testified that he responded to the dispatch about the fight at Frank and Jamie's. Once in the parking lot, Officer Holden witnessed the silver car moving toward him, within ten feet of where he was. Officer Holden observed the occupants of the car that night, and testified that the driver of the car was a bald, older male, and that the backseat passenger was a heavier-set male with hair. Officer Holden also verified that he saw Schuster driving that night, and that after the car stopped, "within seconds," the driver's door opened and Schuster emerged. Officer Holden was asked to identify who the older, bald male was, and he made an in-court identification that Schuster was the man he saw driving the silver car that night.

**{¶ 61}** This evidence indicates that Schuster was operating the vehicle on the night of the incident. Although Schuster testified in his own defense and claimed that he never drove the car, the issue was one of credibility, and thus left within the province of the jury. The jury, by virtue of its verdict, found the state's witnesses credible and believed their testimony that Schuster was operating the silver car that night while he was intoxicated. After viewing the evidence in a light most favorable to the prosecution, we find that the jury could have found the essential elements of the crime proven beyond a reasonable doubt, and that the jury did not clearly lose its way in finding that Schuster committed OVI.

### Possession of Drugs Conviction

**{¶ 62}** Schuster was also convicted of possession of drugs in violation of R.C. 2925.11(A), which provides, "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

**{¶ 63}** During trial, the state presented evidence that Schuster possessed a controlled

substance.[5]   Officer Kresser testified that during his investigation of Schuster's OVI, he detained Schuster in an interview room at the police station.  During that time, Officer Kresser allowed Schuster to make a call, which was recorded in the interview room.  Schuster called his friend and told him that there was something in the trunk of the car he was seen exiting that night.  The jury heard the recorded phone call in which Schuster tells his friend, "there's something in the trunk too.  * * *  Do you understand what I'm saying?  * * * as soon as you open the trunk it's on the left side, dude."  The context of the phone call also indicates that Schuster told his friend that he had watched the police during their investigation, and the police had not yet discovered the items he had placed in the trunk.

{¶ 64} The owner of the car also testified and stated that when he returned to get his car from the bar's parking lot, he opened the trunk and found pills, money, rolling papers, and what appeared to be marijuana.  The owner directly testified that the items did not belong to him and that the items were not in the trunk of his car before he went to Frank and Jamie's that night.

{¶ 65} Officer Joehnk testified that when he was dispatched a second time to Frank and Jamie's, he encountered the owner of the car and Schuster's friend to whom Schuster placed the phone call while in the interview room.  The men directed Officer Joehnk to the trunk of the car where he found the drugs and other items.

{¶ 66} During Schuster's own testimony, he admitted that after he exited the silver car, he "put something in [the owner's] vehicle."  When asked what he placed in the trunk, Schuster testified, "I throwed money.  I throwed Klonapin [sic], and I throwed marijuana in the vehicle."  Schuster also admitted during his testimony that the items found in the trunk belonged to him.

---

5. During trial, Schuster stipulated to the lab report indicating that the pills found in the trunk were Clonazepam, a controlled substance.

{¶ 67} This evidence, especially Schuster's admissions during his testimony, indicate that he clearly possessed the Clonazepam, which is a controlled substance. As such, the possession of drugs conviction was supported by sufficient evidence and was not rendered against the manifest weight of the evidence.

**Tampering with Evidence Conviction**

{¶ 68} Schuster was also convicted of tampering with evidence in violation of R.C. 2921.12(A)(1), which provides, "No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following: Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation."

> [T]o establish a violation of the tampering statute, the state must show that the defendant, with knowledge of a proceeding or investigation that is in progress or likely to be instituted, altered, destroyed, concealed, or removed any "record, document, or thing" with the purpose to impair its value or availability as evidence in *that* proceeding or investigation.

(Emphasis added.) *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, ¶ 18.

{¶ 69} The *Straley* court determined that to support a tampering with evidence charge, the evidence being tampered with must relate to the proceeding or investigation that is occurring at the time the evidence was tampered with. In *Straley*, two plainclothes narcotic detectives in an unmarked police vehicle observed a car driving erratically on a public road. The detectives initiated a stop, and searched the car and Straley's bag, but did not find any narcotics. Although the detectives did not pursue OVI charges against Straley, they did not want her driving home. While the detectives were obtaining permission from their superiors to drive Straley home, she told the detectives that she had to urinate. Straley left the detectives' presence and urinated by a nearby building. One detective went to where Straley urinated and found a clear cellophane baggie containing crack cocaine. While Straley was

convicted of tampering with evidence, the appellate court overturned the conviction, finding that the crack cocaine was not related to the initial investigation of erratic driving. *State v. Straley*, 2d Dist. Clark No. 2012-CA-34, 2013-Ohio-510. The Ohio Supreme Court agreed, finding that "there is nothing in the record to suggest that the officers were conducting or likely to conduct an investigation into trafficking or possession of cocaine when Straley discarded the baggie." 2014-Ohio-2139 at ¶ 19.

{¶ 70} The state's evidence clearly indicates that a bar fight occurred at Frank and Jamie's and that multiple police units responded to a 911 call informing police dispatch of the fight. When Officer Kresser arrived, he observed the silver car turn abruptly and come to a stop, which would indicate that there was some measure of erratic or impaired driving. In fact, when Officer Kresser neared Schuster, Officer Kresser detected a strong odor of an alcoholic beverage coming from Schuster's person and asked Schuster to perform field sobriety tests to determine Schuster's possible intoxication. Officer Kresser was not investigating drug-related activity, and instead, was focused on impaired driving. Officer Kresser was also investigating the possibility that the occupants of the car had been involved in the bar fight, which again, is not a drug-related investigation.

{¶ 71} There is nothing in the record to suggest that at the time Schuster discarded the drugs into the trunk, the police were conducting or likely to conduct an investigation into trafficking or possession of drugs. The drugs and other items Schuster placed in the trunk did not relate to either the bar fight, or the erratic/impaired driving that the officers may have been investigating when they approached Schuster upon his exit from the car. As such, the drugs had no evidentiary value to the bar fight or possible erratic/impaired driving investigation so that the record does not support a conviction for tampering with evidence.

{¶ 72} Having found that Schuster's conviction for tampering with evidence is not supported by sufficient evidence, we reverse his conviction and discharge him of the

tampering with evidence charge. In all other respects, Schuster's convictions for OVI, the related specification, and possession of drugs were supported by sufficient evidence and were not rendered against the manifest weight of the evidence. Therefore, Schuster's fourth assignment of error is overruled in part and sustained in part.

**{¶ 73}** Judgment affirmed in part, reversed in part, and Schuster is discharged as to the tampering with evidence charge.

HENDRICKSON and M. POWELL, JJ., concur.