[Cite as *State v. Binks*, 2018-Ohio-1570.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2017-08-118 |
| | : | O P I N I O N |
| - vs - | | 4/23/2018 |
| | : | |
| ANDREW BINKS a.k.a. HANNAH BINKS, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY AREA II COURT
Case No. CRB 1501379

Michael T. Gmoser, Butler County Prosecuting Attorney, Willa Concannon, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

John D. Hill, Jr., 125 East Court Street, Suite 1000, Cincinnati, Ohio 45202, for defendant-appellant

**HENDRICKSON, P.J.**

{¶ 1} Defendant-appellant, Andrew Binks a.k.a. Hannah Binks, appeals from his conviction in the Butler County Area II Court for domestic violence.[1] For the reasons set forth

---

1. At the time of appellant's arrest and during the trial court proceedings, appellant was in the process of transitioning from male to female. The record refers to appellant as both "Andrew" and "Hannah" and uses both male and female pronouns. At trial, appellant suggested that for clarity the court should use the name "Andrew" and male pronouns when referring to him. In his appellate brief, appellant refers to himself as "Andrew" and uses male pronouns. For consistency and clarity, we will also refer to appellant as "Andrew" and will use male pronouns.

below, we affirm appellant's conviction.

{¶ 2} On November 7, 2015, two deputies from the Butler County Sheriff's Office responded to a domestic dispute at a home in Liberty Township, Butler County, Ohio. Upon arriving on the scene, Deputy Arlen Johnson and Deputy Marquis Givens spoke with appellant and his wife, Karen Binks, about the respective 9-1-1 phone calls each spouse had placed. The deputies were advised that an argument over a dating website Karen joined had started the evening of November 6, 2015, and had escalated the following morning. While angrily cursing and screaming at Karen, appellant grabbed the hood of Karen's sweatshirt and "choked [her] backwards." Appellant then took Karen's phone from her and threw it down the stairs into a wall, thereby destroying it. Appellant was arrested and charged with domestic violence in violation of R.C. 2919.25(C), a misdemeanor of the fourth degree. He was released on his own recognizance on November 9, 2015.

{¶ 3} On May 26, 2016, appellant appeared before the court for a bench trial to a magistrate. Prior to trial commencing, appellant moved to dismiss the charge against him on the basis that his statutory speedy-trial rights had been violated as the state failed to bring him to trial within the 45-days provided for by R.C. 2945.71(B)(1). The magistrate stated he would defer ruling on the motion until a later date and the trial commenced, with the state presenting testimony from Karen, Deputy Johnson, and Deputy Givens.

{¶ 4} Karen testified that at the time of the November 7, 2015 incident, she and appellant had been married for more than 20 years and were living together with their two children at their home in Liberty Township. On the evening of November 6, 2015, appellant discovered Karen had created an account for an online dating website. Karen stated that in response to this discovery, appellant "got violent," "kicked in a door," "threw things," and took her phone away from her. Karen ended up sleeping in her daughter's room that evening.

{¶ 5} Karen testified that the following morning, appellant handed over her cellphone

and told her that if she deleted her dating account, he would let her keep her phone. Karen refused and appellant came up behind her, grabbed her by the hood of her sweatshirt, and "choked [her] backwards." Appellant then grabbed Karen's arms and took the cellphone out of her hand before throwing the phone down the stairs and into a wall, thereby destroying the phone.

{¶ 6} When appellant grabbed Karen by the hood of her sweatshirt, Karen felt pressure on her neck. Karen felt "very scared" as appellant was cursing and screaming at her and "yelling things, like he was going to hurt [her]." Appellant told Karen to get out of the house and to give him the phone. Karen felt appellant would harm her as he had been physically aggressive with her in the past. She recalled a recent occasion where appellant had "punched [her] in the chest." She believed appellant would cause her physical harm as he was "very irrational, very angry. He was up most of the night turning on and off lights, trying to keep me awake. * * * He was violent toward my daughter – just screaming at her." As a result of appellant's behavior, Karen used her daughter's cellphone to call 9-1-1.

{¶ 7} Karen denied that she struck appellant or caused him any injuries. On cross-examination, she admitted that she was not treated for any injuries caused by appellant on November 7, 2015.

{¶ 8} Deputy Johnson testified that after he and Deputy Givens responded to Karen's and appellant's home on November 7, 2015, he spoke with Karen inside the residence while Givens spoke with appellant on the porch of the residence. Johnson observed redness around Karen's neck, stating that "the whole front side was redness." He also observed an upstairs door in the residence that looked like it had been kicked and a "smashed" cellphone laying broken on the floor at the bottom of the stairs. Johnson did not take any pictures of Karen's neck or of the broken cellphone.

{¶ 9} After speaking to Karen, Johnson spoke with appellant. Appellant admitted

there had been an altercation over the dating website Karen had joined, but stated Karen was the aggressor. Appellant claimed Karen pushed him in the chest when they were "tussling" over the cellphone. However, appellant admitted he grabbed the hood of Karen's sweatshirt and pulled her backwards before taking the phone and throwing it down the stairs. Johnson did not observe any injuries or marks on appellant, and when he asked appellant whether he was injured, appellant told him "No, I'm not injured." However, after appellant was arrested, placed in handcuffs, and was being transported to jail, appellant began to loudly complain of chest pain. Appellant was worried that one of his breast implants may have ruptured. Pursuant to a departmental policy requiring deputies to obtain medical attention when a prisoner complains of injury or pain, appellant was examined by paramedics at the jail before being transported to an emergency room as a precautionary measure.

{¶ 10} Deputy Givens testified appellant admitted to "tussling" with Karen over her cellphone after they got into an argument. Although appellant claimed Karen shoved him in the chest, Givens did not see any injuries to appellant's person and appellant did not initially complain of any injury. It was only after appellant was being transported to jail that he began to complain he was in such pain that he required medical attention.

{¶ 11} Following Givens' testimony, appellant moved for acquittal pursuant to Crim.R. 29(A). His motion was denied, and he took the stand in his own defense. Appellant testified about a version of events that differed from Karen's version. Appellant stated that on November 6, 2015, after learning that Karen had joined an online dating website, he and Karen got into an argument and he remotely deleted "everything" from her cellphone. The following morning, Karen asked appellant to restore her cellphone in exchange for her quitting the dating website. However, when appellant went to restore the phone, he discovered Karen had been using the website for longer than he originally knew about and had been dating a number of people. Appellant refused to restore the phone and both he

and Karen started yelling at one another.

{¶ 12} Appellant denied that he threatened to harm Karen, but stated their argument became physical when he refused to return the cellphone to Karen. Appellant testified Karen began to hit him in his chest, and he responded by grabbing the hood of Karen's sweatshirt to pull her off of him. Appellant claimed Karen had been hitting him on the right side of his upper chest, near his breast implant, and that she caused him harm. After moving Karen away from him, appellant threw Karen's cellphone down the stairs before calling 9-1-1.

{¶ 13} Appellant testified that when he spoke with Deputy Givens, he told Givens that his chest hurt "but didn't really go into a discussion" of the injuries with the deputy. He also did not show his injuries to Deputy Givens or Deputy Johnson because he was uncomfortable taking off his shirt and showing his chest to male deputies.

{¶ 14} Appellant explained that when he was transported to the jail, he was placed in handcuffs that were secured behind his back and this strained his chest muscles, causing the muscles to painfully spasm. Appellant claimed that when he was examined at the emergency room, he noticed he had bruises on his chest. He denied that the bruises existed prior to Karen hitting him in the chest. Although appellant claimed he took photographs of the bruises, he did not introduce the photographs into evidence. Appellant did, however, introduce into evidence Karen's police statement to the deputies and documents from the sheriff's office indicating appellant had complained of chest pain upon his November 7, 2015 arrest and had "bruising noted to upper part of right breast" when examined by a nurse and paramedic two days later, on November 9, 2015.

{¶ 15} After hearing the foregoing testimony, the magistrate took the matter under advisement. On June 6, 2016, the magistrate found appellant guilty of domestic violence. Appellant renewed his motion to dismiss based on a violation of his speedy-trial rights, and the magistrate indicated he would rule on the motion at sentencing.

{¶ 16} On July 20, 2016, appellant filed a motion for findings of fact and conclusions of law. He also filed a written motion to dismiss for violation of his speedy-trial rights. The magistrate filed his findings of fact and conclusions of law on August 22, 2016. Appellant appeared before the court for sentencing on September 15, 2016. At this time, the court denied appellant's motion to dismiss, and sentenced appellant to 15 days in jail (with 3 days of jail-time credit), six months of probation, a $100 fine, court costs, and $800 in restitution.

{¶ 17} Appellant filed objections to the magistrate's decision, arguing the trial court erred in denying his motion to dismiss and that the state failed to present sufficient evidence to support his conviction for domestic violence as "[n]o * * * threat (verbal or otherwise) was made" against Karen. The trial court overruled appellant's objections, finding appellant was tried within the 45 days prescribed by R.C. 2945.71(B)(1) after taking into consideration tolling events and appellant's waiver of time. The court also determined that "there was more than sufficient evidence to prove a violation of R.C. 2919.25(C)."

{¶ 18} Appellant appealed his conviction, raising four assignments of error. For ease of discussion, we will address his third and fourth assignments of error together.

{¶ 19} Assignment of Error No. 1:

{¶ 20} THE TRIAL COURT ERRED IN OVERRULING [APPELLANT'S] MOTION TO DISMISS FOR VIOLATION OF HIS RIGHT TO A SPEEDY TRIAL.

{¶ 21} In his first assignment of error, appellant argues the trial court erred in denying his motion to dismiss for violation of his speedy-trial rights. He contends the trial court erred when it found certain periods of time, namely the time between November 12, 2015 and November 19, 2015 and the time between May 19, 2016 and May 26, 2016, tolled and chargeable to him, rather than the state.

{¶ 22} The right to a speedy trial is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Section 10, Article I the Ohio

Constitution. *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, ¶ 32; *State v. Miller*, 12th Dist. Warren No. CA2009-01-008, 2009-Ohio-4831, ¶ 8. "[T]he General Assembly * * * enacted Ohio's speedy-trial statutes to preserve this right." *Id.*, citing R.C. 2945.71, et seq. Compliance with these statutes is mandatory and the statutes "must be strictly construed against the state." *Id.*, citing *State v. Cox*, 12th Dist. Clermont No. CA2008-03-028, 2009-Ohio-928, ¶ 12.

{¶ 23} R.C. 2945.73(B) provides that "[u]pon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code." Pursuant to R.C. 2945.71(B)(1), a person facing a criminal charge for a fourth-degree misdemeanor must be brought to trial within 45 days after the person's arrest or the service of summons.

{¶ 24} Once a defendant demonstrates he was not brought to trial within the permissible time period, the accused presents a prima facie case for dismissal based on a speedy-trial violation. *Miller*, 2009-Ohio-4831 at ¶ 9, citing *State v. Masters*, 172 Ohio App.3d 666, 2007-Ohio-4229, ¶ 10 (3d Dist.). The burden then shifts to the state to prove that time was sufficiently tolled and the speedy-trial time period extended. *Id.*

{¶ 25} "Upon review of a speedy-trial issue, a court is required to count the days of delay chargeable to either side and determine whether the case was tried within the applicable time limits." *State v. Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, ¶ 8. R.C. 2945.72 enumerates specific instances in which the time period that a defendant must be brought to trial in is extended and includes periods of delay caused by an accused's lack of counsel, periods of continuance caused by an accused's own motion, and "the period of any reasonable continuance granted other than upon the accused's own motion." R.C. 2945.72(C) and (H). Additionally, the state may show that the defendant has waived his

speedy-trial rights. *State v. Schuster*, 12th Dist. Clermont Nos. CA2015-05-040 and CA2015-05-041, 2015-Ohio-4818, ¶ 17. "To be effective, an accused's waiver of his or her constitutional and statutory rights to a speedy trial must be expressed in writing or made in open court on the record." *State v. King*, 70 Ohio St.3d 158 (1994), syllabus.

**{¶ 26}** Appellate review of speedy-trial issues involves a mixed question of law and fact. *State v. Messer*, 12th Dist. Clermont No. CA2006-10-084, 2007-Ohio-5899, ¶ 7. An appellate court must give due deference to the trial court's findings of fact if they are supported by competent, credible evidence, but will independently review whether the trial court correctly applied the law to the facts of the case. *Id.*

**{¶ 27}** Appellant was arrested on November 7, 2015. He was not brought to trial until May 26, 2016 – 201 days after his arrest, which is well outside the 45-day time period provided by R.C. 2945.71(B)(1). However, as discussed below, certain portions of this time were tolled and the time chargeable to appellant.

**{¶ 28}** The time period appellant remained jailed, from November 7, 2015 to November 9, 2015, is chargeable to the state. Pursuant to the triple-count provision set forth in R.C. 2945.71(E), "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." However, though time starts to run from the date of a defendant's arrest, the first day itself is not counted when computing the statutory time period. *See State v. Halcomb*, 12th Dist. Warren No. CA94-06-055, 1994 Ohio App. LEXIS 5314, *3 (Nov. 28, 1994), citing *State v. Steiner*, 71 Ohio App.3d 249, 250-51 (9th Dist.1991); Crim.R. 45(A). Therefore, appellant was held in jail for two days, and gets credit for a total of six days. These six days are charged to the state – as are the two days (November 10 and 11, 2015) that passed before appellant's scheduled arraignment, for a total of 8 days.

**{¶ 29}** At appellant's November 12, 2015 arraignment, appellant stated he would be

hiring an attorney to represent him. After the trial court indicated it would continue the matter until December 10, 2015 to allow appellant to obtain representation, appellant questioned whether he could "self-represent, enter a plea, and then hire an attorney at a later date" as he did not "want to add additional time to this * * * case." Following a discussion, the trial court ultimately continued the matter until December 10, 2015, and noted in its entry that the continuance was "at [appellant's] request" as appellant was hiring his own attorney. On November 19, 2015, appellant appeared before the court and waived his speedy-trial rights. Appellant expressed a willingness to sign a waiver of time, telling the court that "once I spoke with my attorney, I can sign the time waiver with no problem. * * * I've come prepared to sign it."[2]

{¶ 30} Appellant contends the seven days that passed between November 12, 2015 and November 19, 2015 should be charged to the state as he did not expressly waive his statutory speedy-trial rights. We disagree and find that the time was properly charged to appellant pursuant to R.C. 2945.72(C), which provides that the time in which an accused must be brought to trial may be extended by "[a]ny period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as required by law." Appellant indicated he was hiring counsel, and the court continued the proceedings to allow appellant to obtain an attorney. The seven days was, therefore, properly determined by the trial court to be tolled and chargeable to appellant. *See, e.g., State v. Seward*, 4th Dist. Ross No. 04CA2784, 2005-Ohio-934, ¶ 16 (finding time tolled between the date the defendant advised the court he was retaining counsel and the date counsel entered an appearance);

---

2. Although appellant expressed in open court that he was waiving his speedy-trial rights, no written waiver of time was filed with the court on November 19, 2015. This is not significant, as an accused may waive his constitutional and statutory rights to a speedy trial in open court on the record. *See State v. King*, 70 Ohio St.3d 158 (1994), syllabus.

- 9 -

*State v. Allen*, 8th Dist. Cuyahoga No. 90552, 2008-Ohio-5251, ¶ 15-17.

{¶ 31} After waiving time on November 19, 2015, appellant appeared before the court on December 10, 2015 and signed a written waiver of time until January 21, 2016. The 63 days that passed between November 19, 2015 and January 21, 2016 were therefore properly charged to appellant.

{¶ 32} On January 21, 2016, appellant appeared before the court and requested the matter be set for trial. Although the case was set to go to trial on February 18, 2016, defense counsel appeared before the court on that date and requested a continuance until May 19, 2016. The 28 days that passed between January 21, 2016 and February 18, 2016 were properly charged to the state. However, the speedy-trial clock was tolled from February 18, 2016 to May 19, 2016, and the 91 days that passed properly charged to appellant pursuant to R.C. 2945.72(H), as he requested the continuance.

{¶ 33} When the case was called on May 19, 2016, the state requested a continuance, indicating that Karen faced contempt charges in another court if she testified against appellant in the criminal case. Apparently, while the criminal case was pending against appellant, appellant and Karen sought to divorce one another. Less than 24 hours before the criminal trial was set to commence on May 19, 2016, the divorce court placed Karen under a contempt order and threatened her with a 30-day jail sentence if she did not cooperate in getting the domestic violence charge appellant faced dismissed. The state asked for a continuance to investigate the contempt charges Karen faced. Over appellant's objection, the court granted a one-week continuance and set the matter for trial on May 26, 2016.

{¶ 34} Appellant argues this seven-day period of time should count against the state as it "does not fall within the 'reasonable continuance' exception of R.C. 2954.72(H)." Appellant contends that because the divorce court's contempt order was "plainly and patently

illegal as against public policy" and the divorce court "had no legal grounds upon which to insinuate itself into the criminal proceedings," the continuance was unnecessary and unreasonable. He also argues that because Karen indicated she would cooperate with the prosecutor to dismiss the domestic violence charge in accordance with the divorce court's order, and the prosecutor "opted of [her] own initiative to disregard Karen's wishes and request the continuance so [the state] could continue to prosecute [appellant]," the delay caused by the continuance should be charged against the state. We disagree.

{¶ 35} R.C. 2945.72(H) specifically provides that the time within which an accused must be brought to trial may be extended by "the period of any reasonable continuance granted other than upon the accused's own motion." With respect to this provision, the Ohio Supreme Court has held that "it is difficult, if not unwise, to establish a *per se* rule of what constitutes 'reasonableness' beyond the [time periods set forth in] R.C. 2945.71. Invariably, resolution of such a question depends on the peculiar facts and circumstances of a particular case." (Emphasis sic.) *State v. Saffell*, 35 Ohio St.3d 90, 91 (1988). The supreme court found a continuance to accommodate an arresting officer's appearance as a witness at trial was reasonable and tolled the speedy-trial clock pursuant to R.C. 2945.71(H). *Id.* at 91-92.

{¶ 36} Similarly, in *State v. Nelson*, 12th Dist. Clinton No. CA2007-11-046, 2009-Ohio-555, ¶ 13-28, we found it was reasonable for a court to continue a trial date by more than a month to ensure an expert witness's appearance at trial. In doing so, we noted that in accordance with R.C. 2945.72(H), "an extension initiated by the state's motion does not necessarily run afoul of the speedy trial time limit." *Id.* at ¶ 25. "[It is] well-settled that the availability of a key prosecution witness is a reasonable ground for granting a continuance pursuant to R.C. 2945.72(H)." *Id.*, citing *State v. Mitchell*, 7th Dist. Mahoning No. 06-MA-169, 2008-Ohio-645, ¶ 34.

{¶ 37} Further, in *State v. Adkins*, 144 Ohio App.3d 633, 641 (12th Dist.2001), this

court held that

> [w]hen a witness fails to appear, a court does not abuse its discretion by extending the trial date beyond a prescribed time period of the prosecutor has used 'due diligence' to insure the attendance of the witness. *State v. Reeser*, 63 Ohio St.2d 189 (1980). The period within which a defendant must be tried is extended when a trial court grants a continuance under these circumstances.

We determined that a delay of 14 days to secure the witness's presence was reasonable. *Id.*

{¶ 38} Although the present situation is somewhat different from those in *Saffell*, *Nelson*, and *Adkins*, in that Karen was not physically absent or unavailable on May 19, 2016, the divorce court's unexpected order threatening Karen with contempt for acting as a witness in the criminal proceedings meant Karen was, in essence, unavailable to testify. The trial court's decision to delay trial by seven days to allow the state to investigate the matter and to resolve the issue so that Karen could testify was reasonable under the circumstances. Therefore, pursuant to R.C. 2945.72(E), the time to bring appellant to trial was tolled by seven days, and these days are not chargeable to the state.

{¶ 39} Accordingly, taking into consideration the tolling events and appellant's waiver of time, we find that appellant was brought to trial within the 45-day limit prescribed by R.C. 2945.71(B)(1). Between the date of his arrest and the date his trial commenced, only 36 days chargeable to the state had elapsed. Therefore, the trial court did not err in denying appellant's motion to dismiss as his statutory speedy-trial rights were not violated.

{¶ 40} Appellant's first assignment of error is overruled.

{¶ 41} Assignment of Error No. 2:

{¶ 42} THE TRIAL COURT ABUSED ITS DISCRETION IN IMPROPERLY CONSIDERING RULE 404(B) "OTHER ACTS" EVIDENCE OF PRIOR INSTANCES OF ALLEGED DOMESTIC VIOLENCE PERPETRATED BY [APPELLANT] AGAINST KAREN BINKS.

{¶ 43}  In his second assignment of error, appellant argues the trial court erred in allowing Karen to testify, over defense counsel's objection, about past incidents in which appellant physically abused her.  At trial, after Karen described appellant breaking her phone and grabbing the hood of her sweatshirt, the following testimony and discussion occurred:

> [Prosecutor]:  How did this incident make you feel?
>
> [Karen]:  I was very scared.  *It's not the first time it's happened.*
>
> [Defense Counsel]:  Objection.  Move to strike.
>
> [Prosecutor]:  Judge, that type of testimony is allowed to * * * show the defendant – or, I'm sorry – the victim's feelings.  It's not being asserted for the truth of whether these incidents occurred, but it's explaining her thought process.
>
> THE COURT:  I'm going to let it stand and give it the weight that I think it – it should have.  Ask another question.
>
> [Prosecutor]:  Did you believe that he would harm you?
>
> [Karen]:  Yes.
>
> [Prosecutor]:  Why is that?
>
> [Karen]:  *Because he has in the past.*
>
> [Defense Counsel]:  Objection.  Move to strike.
>
> THE COURT:  I'm going to grant that on the idea of timeframe.
>
> [Prosecutor]:  You want us to lay a foundation for that?
>
> THE COURT:  Yes, I do, if you're going to ask it again.
>
> [Prosecutor]:  When I asked you why did you believe that he would hurt you again, you stated that he had before.
>
> [Karen]:  Yes.
>
> [Prosecutor]:  Is that recent in time to November 7th of 2015?
>
> [Karen]:  Yes.
>
> [Prosecutor]:  Can you tell me what occurred on times only right around November 7th of 2015?

[Karen]: *He has punched me in the chest.*

[Defense Counsel]: Judge, I'm going to object. These prior bad acts are not admissible. No notice was provided as to what specifically they are under Rule 404, and there has been no paperwork or anything to corroborate that. And I respectfully ask the Court to exclude any testimony of that effect.

THE COURT: Was discovery asked for and granted and given?

* * *

[Defense counsel]: Judge, I don't believe I filed a motion * * *.

* * *

THE COURT: I don't see one in the file. I'm going to overrule your motion on the strength that there's been no formal request for discovery by the defendant through any one of his counsel, and the acceptance of what was given, by way of discovery by the prosecution, has been accepted as to what would normally be given, unless there was a specific sort of situation wherein specifically evidence [sic] – asking for evidence of any 404(B)-type statement – and I say "type statement," not specifically by the rule.

(Emphasis added.) The court therefore overruled defense counsel's objection to the lack of notice and allowed Karen's testimony on the basis that there had been no formal request for discovery filed by the defense.

{¶ 44} Appellant contends Karen's testimony was inadmissible under Evid.R. 404(B) as the state neglected to give advance notice of its intent to introduce the "other acts" evidence. Appellant asserts that defense counsel's failure to request discovery has no bearing on the state's duty under Evid.R. 404 to give advance notice of its intent to use the "other acts" evidence. He further argues that Karen's testimony about the "other acts" of abuse should have been excluded as the probative value of the evidence was outweighed by the danger of unfair prejudice.

{¶ 45} "A trial court has broad discretion in the admission and exclusion of evidence

- 14 -

and unless it clearly abused its discretion and appellant is materially prejudiced thereby, an appellate court should not disturb the decision of the trial court." *State v. Martin*, 12th Dist. Butler No. CA2007-01-022, 2007-Ohio-7073, ¶ 9. An abuse-of-discretion standard of review is a deferential review. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14. An abuse of discretion is more than an error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8.

**{¶ 46}** "Evidence that an accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character." *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 15. Pursuant to Evid.R. 404(B),

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.*

(Emphasis added.)

**{¶ 47}** It is uncontested that the state did not provide appellant with notice in advance of trial of its intent to introduce appellant's prior abusive acts towards the victim. The trial court's determination that appellant's failure to make a formal discovery request somehow waived the notice provision of Evid.R. 404(B) is incorrect. The obligation of the state to provide notice of its intent to use the "other acts" evidence pursuant to Evid.R. 404(B) is completely independent of a request for discovery under Crim.R. 16. "If providing discovery alone were sufficient to satisfy the notice requirements of Evid.R. 404(B) the rule would be

superfluous." *State v. Plevyak*, 11th Dist. Trumbull No. 2013-T-0051, 2014-Ohio-2889, ¶ 18.

{¶ 48} While the state should have provided advance notice of its intent to introduce the "other acts" evidence, its failure to do so does not automatically mean the trial court erred by admitting the evidence or that appellant was prejudiced by the admission of the evidence. As the Staff Notes accompanying Evid.R. 404(B) indicate, "[t]he rule should not be construed to exclude otherwise relevant and admissible evidence solely because of a lack of notice, absent a showing of bad faith." 2012 Staff Note, Evid.R. 404. There is no evidence that the prosecutor acted in bad faith – that is, withholding notice of the "other acts" in order to gain a tactical advantage at trial. Appellant does not claim in his brief that the state acted in bad faith or that the lack of notice caught him by surprise. Instead, he argues the evidence should not have been admitted and was prejudicial as it was inflammatory in that it tended to show he had a propensity to commit the offense.

{¶ 49} In *Williams*, 2012-Ohio-5695, the supreme court outlined a three-part test for courts to use when determining the admissibility of "other acts" evidence. First, the court should "consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *Id.* at ¶ 20, citing Evid.R. 401. Second, the court should determine "whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B)." *Id.* Third, the court should "consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice." *Id.*, citing Evid.R. 403.

{¶ 50} With respect to the first and second parts of the test, this court has previously recognized that within the context of a trial for domestic violence, "prior acts of violence between a defendant and the victim are highly probative in establishing the victim's belief of

impending harm."  *State v. Rhoads*, 12th Dist. Clermont No. CA2012-05-040, 2013-Ohio-152, ¶ 29.  In the prosecution of domestic violence under R.C. 2919.25(C), "the state of mind of the victim is an essential element of [the] crime."  *State v. Drake*, 135 Ohio App.3d 507, 510 (12th Dist.1999).  As such, evidence of a defendant's prior abuse of the victim is admissible under Evid.R. 404(B) to prove the victim's state of mind at the time of the offense.  *See id.* at 511; *State v. Collie*, 108 Ohio App.3d 580, 584 (1st Dist.1996) (holding that "[e]vidence of specific past acts toward the same victim * * * can be used to establish the basis of the victim's belief that the offender is about to cause imminent physical harm, an element of [the] crime").  The "other acts" evidence was therefore presented for a legitimate purpose.

{¶ 51}  As for the third part of the test, appellant claims Karen's testimony was highly prejudicial as it was "so inflammatory that it may just as well have been offered to show that [appellant] had a propensity to commit spousal abuse."  In evaluating appellant's claim of prejudice, it is important to note that appellant was tried to the bench.  The Ohio Supreme Court has recognized that in bench trials, the trial judge is "presumed to consider only the relevant material and competent evidence in arriving at a judgment unless the contrary affirmatively appears from the record."  *State v. Eubank*, 60 Ohio St.2d 183, 187 (1979).  *See also State v. Flores*, 12th Dist. Warren No. CA2014-03-037, 2014-Ohio-5751, ¶ 29.  We must therefore presume that the trial court considered the "other acts" evidence only for its proper limited purpose and not to show appellant's propensity or inclination to commit crime or that he acted in conformity with bad character.  *See State v. Pettaway*, 3d Dist. Seneca No. 13-14-18, 2015-Ohio-1597, ¶ 31 (noting that "a judge is presumed to use evidence for its proper limited purposes and therefore, concern that other acts evidence will be improperly considered by the trier of fact does not exist in a bench trial").

{¶ 52}  Accordingly, although we find the trial court erred in overruling appellant's

objection to Karen's "other acts" testimony on the basis that defense counsel failed to make a formal request for discovery, we find that the error was harmless. Karen's testimony was properly admitted at trial as the "other acts" evidence was relevant, offered for a legitimate purpose, and its probative value was not outweighed by the danger of unfair prejudice. Appellant's second assignment of error is, therefore, overruled.

{¶ 53} Assignment of Error No. 3:

{¶ 54} [APPELLANT'S] CONVICTION WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 55} Assignment of Error No 4:

{¶ 56} [APPELLANT'S] CONVICTION WAS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE.

{¶ 57} In his third and fourth assignments of error, appellant argues his domestic violence conviction is against the manifest weight of the evidence and is not supported by sufficient evidence.

{¶ 58} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 59} On the other hand, a manifest weight of the evidence challenge examines the

"inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14.  To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66.  An appellate court will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶ 60}  Further, although the legal concepts of sufficiency of the evidence and weight of the evidence are quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 61}  Appellant was convicted of domestic violence in violation of R.C. 2919.25(C), which provides that "[n]o person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member."  Appellant argues that the state failed to prove every element of the offense, as it did not demonstrate that he "knowingly" caused Karen to believe that he would cause her imminent physical harm by means of a "threat of force."

{¶ 62}  "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature."  R.C. 2901.22(B).  "Force" is defined as "any violence, compulsion, or constraint

- 19 -

physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). While the term "threat" is not defined by statute, the Ohio Supreme Court has stated that the term "represents a *range of statements or conduct* intended to impart a feeling of apprehension in the victim." (Emphasis added.) *State v. Cress*, 112 Ohio St.3d 72, 2006-Ohio-6501, ¶ 39. "[A] threat need not be verbalized; rather, the threat can be implied by the offender's actions." *State v. Terzo*, 12th Dist. Butler No. CA2002-08-194, 2003-Ohio-5983, ¶ 18.

{¶ 63} After reviewing the record, weighing inferences and examining the credibility of the witnesses, we find that appellant's conviction for domestic violence was supported by sufficient evidence and was not against the weight of the evidence. The state presented testimony and evidence from which the trier of fact could have found all the essential elements of the offense proven beyond a reasonable doubt. The state presented evidence that appellant's actions knowingly caused Karen to believe appellant would physically harm her. Appellant's actions in physically grabbing Karen and angrily shouting and cursing at her constituted a threat of force. Karen testified appellant grabbed the hood of her sweatshirt and "choked [her] backwards" while cursing, screaming, "yelling things, like he was going to hurt [her]," and telling her to "get out" of the house. Appellant also grabbed Karen's arms before taking her cellphone and throwing the cellphone down the stairs. Appellant's conduct, coupled with his actions from the night before where he kicked in a door and threw things, as well as a recent incident where he punched Karen in the chest, caused Karen to believe that appellant would cause her imminent physical harm.

{¶ 64} Appellant argues the trial court "credited the wrong witness' testimony" as Karen was a proven liar whose "story made very little sense." As proof that Karen lied in her testimony, appellant points to conflicting evidence about whether he yelled at Karen after the deputies arrived on the scene and whether Karen caused him physical injury. At trial, Karen

testified appellant continued to shout at her, yelling at her "not [to] have him arrested" after the deputies arrived. Karen also denied that she hit appellant or caused him injury. In contrast, Deputy Johnson testified that appellant did not yell at Karen after the deputies' arrival on scene and appellant testified he was injured when Karen hit him in the chest, an injury appellant contends was corroborated by records obtained from the sheriff's office.

{¶ 65} As an initial matter, we note that "[i]t is well-established that when conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17. When there is a conflict in the testimony of witnesses, it is for the trier of fact to determine the weight and credibility to be given to such evidence. *State v. Marcum*, 12th Dist. Butler No. CA2017-05-057, 2018-Ohio-1009, ¶ 31, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "Credibility determinations are based not only on the substance of the testimony, but from all facts and circumstances surrounding the testimony, particularly the manner and demeanor of the witnesses, which only the trier of fact can observe." *Id.* As the trier of fact, the magistrate was free to believe all, part, or none of the witnesses' testimony. *State v. Coleman*, 12th Dist. Fayette No. CA2011-09-020, 2012-Ohio-3630, ¶ 19. Here, the magistrate clearly found Karen's testimony credible, stating, "This Magistrate believed the victim was telling the truth and she was not lying. This Magistrate believes [the] victim was more believable than the Defendant." The court was entitled to discredit appellant's testimony that Karen was the aggressor in the incident, especially in light of the fact that appellant's testimony largely corroborated Karen's version of events – he admitted to arguing with Karen, pulling on the hood of her sweatshirt, taking her phone from her, and throwing the phone down the stairs.

{¶ 66} Accordingly, having thoroughly reviewed the record in the present case, we

find that the trial court did not lose its way and create such a manifest miscarriage of justice that appellant's conviction for domestic violence must be reversed. Appellant's conviction was not against the manifest weight of the evidence and was, therefore, necessarily supported by sufficient evidence. *See Jones*, 2013-Ohio-150 at ¶ 19.

{¶ 67} Appellant's third and fourth assignments of error are overruled.

{¶ 68} Judgment affirmed.

RINGLAND and M. POWELL, JJ., concur.