[Cite as *State v. Estill*, 2026-Ohio-2101.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-250565 |
| | | TRIAL NO. | 25/CRB/11157 |
| Plaintiff-Appellee, | : | | |
| vs. | : | | |
| ADREYANNA ESTILL, | : | *JUDGMENT ENTRY* | |
| Defendant-Appellant. | : | | |

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 6/5/2026 per order of the court.**


**By:**_____

        **Administrative Judge**

[Cite as *State v. Estill*, 2026-Ohio-2101.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-250565 |
| | | TRIAL NO. | 25/CRB/11157 |
| Plaintiff-Appellee, | : | | |
| vs. | : | | |
| ADREYANNA ESTILL, | : | *O P I N I O N* | |
| Defendant-Appellant. | : | | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: June 5, 2026

*Emily Smart Woerner*, City Solicitor, *Susan M. Zurface*, Chief Prosecuting Attorney, and *Meagan W. Myers*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Christine Y. Jones*, Assistant Public Defender, for Defendant-Appellant.

**KINSLEY, Presiding Judge.**

{¶1} Defendant-appellant Adreyanna Estill appeals from her conviction for telecommunications harassment, a first-degree misdemeanor, following a bench trial in the Hamilton County Municipal Court. Estill raises three assignments of error on appeal. First, she argues that the trial court abused its discretion and committed plain error by admitting "other acts" testimony without prior notice, by allowing the state to elicit hearsay evidence, and by admitting evidence that violated the best evidence rule. Second, she argues that she was denied the effective assistance of counsel. And finally, Estill contests the weight and sufficiency of the evidence supporting her conviction. For reasons discussed below, we affirm the judgment of the trial court.

## *Background*

{¶2} On June 9, 2025, A.S., who was pregnant at the time, received two sets of text messages from an unknown number, which appeared to be delivered through a messaging application. The first text exchange read:

> Sender: That baby might not live.
>
> A.S.: And is [laughing emojis] you have the wrong person boo. Well I'm super far along so we'll see ma'am.
>
> Sender: Ima be waiting at in the waiting room. With our man.
>
> A.S.: Okay bring a gift pls I'm probably not pregnant by "our man" cause I'm engaged but we welcome to the gifts madam.
>
> Sender: Pregnant by man that's cheating on you. Yes our man. The gift is these hands. Baby daddy pulling up on me when you sleep.

{¶3} Several weeks later, on July 2, 2025, the State charged Estill with telecommunications harassment, a first-degree misdemeanor, in violation of R.C. 2917.21. The complaint was based entirely on the June 9, 2025 messages. The trial

court conducted a bench trial on August 28, 2025, at which two witnesses testified, A.S. and Officer Nash Zahn.

**{¶4}** A.S., who was seven-and-a-half months pregnant, testified that Estill initially contacted her on Facebook messenger in 2024 from an account in Estill's name after A.S. became pregnant by the same man who fathered Estill's child. A.S. described the Facebook messages as threatening and harassing and said they "taunt[ed]" her for having fertility issues. A.S. blocked Estill on Facebook. A.S. said that since then, Estill continued to harass her, including by calling A.S. from an unknown number. On one occasion, Estill asked A.S. to fight and then said, "Shut up before I make you lose your baby."

**{¶5}** A.S. said she received the messages at issue on June 9, 2025. She identified two exhibits, State's Exhibits 1 and 2, which were pictures of original screenshots she had taken of the messages from her phone. She confirmed that the exhibits accurately depicted the messages she received, even though they were not the original screenshots.

**{¶6}** A.S. testified that she did not recognize the phone number from which the messages were sent and could not recall if she had received messages from that number before. When asked how she knew who sent the messages, A.S. said, "I figured it was Adreyanna because the messages were the same, threatening the baby, threatening me. They have the same type of relation."

**{¶7}** Regarding the messages in question, A.S. said she interpreted the phrase "the gift is these hands" to be a threat of physical assault, and she believed the language about her baby to be threatening in nature.

**{¶8}** On cross-examination, A.S. admitted that she had received "harassment from multiple numbers, so it was hard to track down who was who." She also testified

that she and Estill are not friends and she did not give her phone number to Estill.

{¶9}  The trial court asked A.S. how she knew the messages came from Estill. She explained that she received texts from a phone number that was "linked" to Estill in the past.  She also said that Estill called her but did not identify herself, although A.S. knew it was Estill because the caller "kept mentioning the same things that she had mentioned in the text messages."

{¶10}  Officer Nash Zahn of the Cincinnati Police Department testified that he conducted a search in Axon, a law enforcement reporting system, for the phone number from which the messages were sent.  The search linked Estill to the phone number.

{¶11}  The trial court found Estill guilty of telecommunications harassment and sentenced her to 180 days in jail, which it suspended, and one year of probation, and imposed court costs.  This appeal followed.

### *Analysis*

{¶12}  Estill raises three assignments of error on appeal.  First, she argues that the trial court abused its discretion and committed plain error by admitting A.S.'s testimony about the earlier Facebook messages, Zahn's testimony about the Axon search results, and State's Exhibits 1 and 2, which were photos of screenshots and not originals.  Second, she argues that she was denied the effective assistance of counsel because her attorney did not object to A.S.'s testimony about the prior messages and Zahn's hearsay testimony about the Axon search.  And finally, Estill contests the weight and sufficiency of the evidence supporting her conviction.

### *A.  Evidentiary Issues*

{¶13}  Estill's first assignment of error raises one evidentiary issue that is preserved and two that are not.  Thus, we apply both the plain error and abuse of

discretion standards of review to her assignment of error as appropriate.

{¶14} When a party fails to object to an error at trial, appellate courts apply plain error review. This court said in *State v. Browner*,

> Plain errors must satisfy three limitations set forth in Crim.R. 52(B). First, an error, meaning a deviation from a legal rule, must have occurred. Second, the error must be plain, in that there must be an obvious defect in the trial proceedings. Third, the error must have affected substantial rights, meaning that the trial court's error must have affected the outcome of the trial.

*State v. Browner*, 2024-Ohio-1547, ¶ 8 (1st Dist.). Under the plain error standard, "[w]e reverse the trial court's judgment . . . only under exceptional circumstances and only to prevent a miscarriage of justice." (Cleaned up.) *State v. Sowders*, 2023-Ohio-4498, ¶ 11 (1st Dist.), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶15} When a party objects to the admission of evidence at trial, the trial court's decision is reviewed for an abuse of discretion. *State v. Fritsch*, 2023-Ohio-2676, ¶ 10 (1st Dist.), citing *State v. Morris*, 2012-Ohio-2407, ¶ 19. If an appellate court determines that the trial court abused its discretion in admitting evidence, it then applies harmless error review under Crim.R. 52(A). *State v. Jones*, 2020-Ohio-3051, ¶ 18 (1st Dist.), citing *State v. Perry*, 2004-Ohio-297, ¶ 15. Harmless error review requires "(1) that the defendant was prejudiced by the admission of the improper evidence at trial, (2) that the appellate court believes that the error was not harmless beyond a reasonable doubt, and (3) that after excising the improper evidence, the remaining evidence overwhelmingly supports finding the defendant guilty." *State v. Akins*, 2024-Ohio-1491, ¶ 28 (1st Dist.), citing *State v. Smith*, 2019-

Ohio-3257, ¶ 23 (1st Dist.).

### 1. *"Other Acts" Evidence*

{¶16}   Estill first argues that the trial court committed plain error in admitting A.S.'s testimony that she identified Estill as the sender of the June 9, 2025 messages by comparing them to Estill's previous messages.  More specifically, Estill contends that the State failed to provide notice of its intent to offer the evidence at trial as required by Evid.R. 404(B)(2).  Estill did not object to A.S.'s testimony below, so we review her claim for plain error on appeal.  *See State v. Grubbs*, 2025-Ohio-1384, ¶ 39 (1st Dist.).

{¶17}   Pursuant to Evid.R. 404(B)(2), the proponent of "other acts" evidence must provide reasonable notice of its intent to offer the evidence.  The rule requires the notice to occur either before trial or during trial, if the trial court excuses pretrial notice for good cause.  *See* Evid.R. 404(B)(2)(c).

{¶18}   The failure to provide the notice required by Evid.R. 404(B)(2) is not automatic grounds for excluding "other acts" evidence at trial.  *See State v. Binks*, 2018-Ohio-1570, ¶ 48 (12th Dist.).  Rather, a trial court may only exclude otherwise relevant and admissible evidence for lack of notice under Evid.R. 404(B)(2) if there has been "a showing of bad faith." *See Grubbs* at ¶ 40, citing *Binks* at ¶ 48.  Where the lack of notice is not raised in the trial court, and the record is accordingly devoid of evidence of bad faith, the lack of notice cannot justify the exclusion of otherwise admissible evidence. *Id.* at ¶ 41.

{¶19}   The State concedes that it did not provide Evid.R. 404(B)(2) notice.  But because Estill did not object below, there is no evidence in the record as to whether the State acted in bad faith.  And absent bad faith, the State's failure to provide pretrial notice is not a basis for excluding A.S.'s testimony about Estill's other acts.  *See*

*Grubbs*, 2025-Ohio-1384, at ¶ 40-41 (1st Dist.). The trial court did not commit plain error by allowing the State to introduce "other acts" evidence.

### 2. *Hearsay*

**{¶20}** Estill next argues that the trial court erred in permitting Zahn to testify that, according to the results of his Axon search, Estill owned the phone number from which the June 9, 2025 messages were sent. Estill concedes that she failed to object to Zahn's testimony, so we review this issue for plain error. *See Sowders*, 2023-Ohio-4498, at ¶ 11 (1st Dist.).

**{¶21}** "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." Evid.R. 801(C). "Testimony as to the results of a computer inquiry constitutes a textbook example of hearsay" when it is "offered for the truth of the matter asserted." *State v. Justice*, 2024-Ohio-2574, ¶ 22 (1st Dist.).

**{¶22}** The State concedes that Zahn's testimony about the results of the computer inquiry constituted hearsay. Nevertheless, the State argues that its admission did not amount to plain error because it did not affect the outcome of the trial. This argument has merit. In a bench trial, "we presume that the trial court did not consider improper evidence in reaching its verdict. Rather, we presume that the court considered only relevant, material and competent evidence unless the record affirmatively discloses otherwise." (Cleaned up.) *State v. Neal*, 2022-Ohio-1290, ¶ 31 (1st Dist.).

**{¶23}** Estill's case was tried to the bench. In finding Estill guilty, the trial court exclusively relied on A.S.'s testimony to identify Estill as the perpetrator in this case. It did not mention Zahn's testimony in explaining its ruling, so we presume that the trial court did not consider it. *See id.* Given this context, the admission of this hearsay

evidence did not affect the outcome of the trial, and therefore, did not constitute plain error. *See Browner*, 2024-Ohio-1547, at ¶ 8 (1st Dist.).

### 3. *Best Evidence Rule*

**{¶24}** In her final evidentiary challenge, Estill argues that the trial court abused its discretion in admitting State's Exhibits 1 and 2–the photographs depicting screenshots of messages A.S. received on June 9, 2025. Estill objected at trial on the basis that the photographs were not the best evidence of the messages, an argument she repeats on appeal.

**{¶25}** Evid.R. 1002 provides that to prove the content of a writing, the original writing is required, "except as otherwise provided in these rules." Evid.R. 1003 allows duplicates to be admissible "to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate of the original." "An 'original' of a writing . . . is the writing . . . itself or any counterpart intended to have the same effect by a person executing or issuing it." Evid.R. 1001(3). "A 'duplicate' is a counterpart produced by the same impression as the original . . . or by means of photography." Evid.R. 1001(4).

**{¶26}** "The trial court is vested with the sound discretion to admit duplicates, and those rulings will not be overturned absent an abuse of discretion." *State v. Mead*, 2021-Ohio-1107, ¶ 32 (1st Dist.), citing *State v. Searles*, 2019-Ohio-3109, ¶ 7 (1st Dist.). "The party seeking to exclude the duplicate has the burden of demonstrating that it should be excluded." *Id.* at ¶ 34, citing *State v. Tibbetts*, 92 Ohio St.3d 146, 160 (2001). Applying these principles, an objection to the admission of evidence based on the best evidence rule "must be something more than a frivolous objection." *Marder v. Marder*, 2008-Ohio-2500, ¶ 50 (12th Dist.).

**{¶27}** Estill does not raise any serious best evidence objection to State's

9

Exhibits 1 and 2. She does not contend that there was a genuine question as to the authenticity of the original or that it would be unfair to admit the duplicate. Rather, she merely argues that the State could have submitted the screenshots in place of photos. But no authority requires the State to do so.

{¶28} Estill did not meet her burden to demonstrate that the evidence should have been excluded as the photographs of the screenshots of text messages were admissible under Evid.R. 1001(4). Therefore, the trial court did not abuse its discretion in admitting the photos into evidence.

{¶29} Because the trial court did not commit plain error in admitting hearsay or "other acts" testimony, and because it did not abuse its discretion in admitting photocopies of text messages, we overrule Estill's first assignment of error.

### B. Ineffective Assistance

{¶30} In her second assignment of error, Estill argues that her trial attorney represented her ineffectively in violation of her Sixth Amendment right to counsel by failing to object to the admission of "other acts" evidence and to Zahn's hearsay statements. She asserts that because this evidence was introduced to establish the contested issue of identity, its admission affected the trial's outcome.

{¶31} "A court will presume that a properly licensed attorney is competent, and the defendant bears the burden to show ineffective assistance of counsel." *State v. Hackney*, 2016-Ohio-4609, ¶ 36 (1st Dist.). To succeed on an ineffective assistance of counsel claim, Estill must show that "(1) trial counsel's performance was deficient, and (2) the deficient performance deprived [Estill] of a fair trial." *State v. Akins*, 2024-Ohio-1491, ¶ 45 (1st Dist.), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An appellant's "failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other." *Id.* "[T]o show that a defendant has been prejudiced by

counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989).

### 1. 404(B) Evidence

**{¶32}** Estill argues that her counsel was ineffective for failing to object to the State's use of Evid.R. 404(B) evidence when the State failed to provide written notice of its intent to use such evidence. "Counsel's failure to make objections is not, by itself, enough to sustain a claim for ineffective assistance of counsel." *Hackney* at ¶ 39. As already discussed, the lack of notice is not a basis for excluding Evid.R. 404(B) evidence unless the State acted in bad faith. *Grubbs*, 2025-Ohio-2756, at ¶ 40-41 (1st Dist.). On this record, there is no evidence of bad faith to justify excluding A.S.'s "other acts" testimony. If such evidence exists, it falls outside of the record, making this claim more appropriate for disposition by way of a postconviction petition. *See, e.g., State v. Cephas*, 2019-Ohio-52, ¶ 34 (1st Dist.) (noting that we cannot resolve matters of ineffective assistance based on evidence outside the record on direct appeal).

**{¶33}** Given the lack of bad faith evidence in the record, Estill cannot demonstrate that any objection by her counsel due to the State's failure to provide Evid.R. 404(B) notice would have resulted in the exclusion of A.S.'s testimony. As a result, Estill cannot demonstrate that her attorney's failure to object prejudiced her. Counsel's failure to object to the State's use of Evid.R. 404(B) evidence therefore did not amount to ineffective assistance of counsel.

### 2. Hearsay Testimony

**{¶34}** Estill next argues that her counsel was ineffective for failing to object to Zahn's hearsay testimony. As previously discussed, because we presume the trial court did not consider this hearsay evidence in reaching its verdict, Estill cannot prove that

counsel's failure to object affected the outcome of trial. *See Neal*, 2022-Ohio-1290, at ¶ 31 (1st Dist.); *State v. Smith*, 2025-Ohio-3131, ¶ 54 (1st Dist.). Thus, counsel's failure to object to Zahn's hearsay statements did not amount to ineffective assistance of counsel.

{¶35} Because counsel's failure to object to hearsay statements or "other acts" evidence did not affect the outcome of trial, those failures did not amount to ineffective assistance of counsel, and we overrule Estill's second assignment of error.

### C. Sufficiency and Manifest Weight

{¶36} In her final assignment of error, Estill challenges the sufficiency of the evidence supporting her conviction and argues that her conviction was against the manifest weight of the evidence. In particular, she argues that the State failed to prove that she was the person who sent the text messages or that the sender's purpose was to abuse, threaten, or harass A.S. We disagree.

{¶37} To assess whether a conviction is supported by sufficient evidence, we ask "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "Where reasonable minds can reach different conclusions upon conflicting evidence, determination as to what occurred is a question for the trier of fact. It is not the function of an appellate court to substitute its judgment for that of the factfinder." *State v. Gurung*, 2024-Ohio-3202, ¶ 19 (1st Dist.).

{¶38} By contrast, a manifest-weight challenge requires us to independently "review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Powell*, 2020-Ohio-4283, ¶ 16 (1st Dist.), citing *State*

*v. Thompkins*, 78 Ohio St.3d 380, 388 (1997). We afford substantial deference to the credibility determinations of the trier of fact because the trier directly observes the witnesses during trial proceedings. *See State v. Glover*, 2019-Ohio-5211, ¶ 30 (1st Dist.), quoting *Barberton v. Jenney*, 2010-Ohio-2420, ¶ 20. Accordingly, reversal on manifest weight grounds is warranted "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

### 1. *Identity*

{**¶39**} Estill first questions the sufficiency of the evidence that established her identity as the person who sent the messages. The identity of a person who committed a crime is always an essential element that must be proven by the State. *State v. Gibson*, 2008-Ohio-410, ¶ 8 (9th Dist.). Identity may be proven by direct or circumstantial evidence. *State v. Lewis*, 2019-Ohio-4081, ¶ 20 (7th Dist.). Further, "[i]n reviewing the legal sufficiency of the evidence, we consider all of the evidence presented at trial, regardless of whether it was admitted in error." *State v. Kelly*, 2024-Ohio-1864, ¶ 31 (1st Dist.), citing *State v. Brewer*, 2009-Ohio-593, ¶ 17-20.

{**¶40**} With regard to the identity of the person who sent the June 9, 2025 messages, the State presented sufficient circumstantial evidence that it was Estill. A.S. testified that she began receiving Facebook messages from Estill after A.S. became pregnant by the same man who fathered Estill's child. Estill sent A.S. multiple Facebook messages which threatened A.S. and her unborn child and mocked her infertility issues. After blocking Estill on Facebook, A.S. began receiving anonymous calls and text messages in which the caller threatened A.S. and her baby. A.S. believed Estill was responsible for the calls and texts because the communications were of the same nature as the Facebook messages and contained similar content. Moreover, the

13

trial court could infer that the messages came from the same person, as they shifted delivery method after A.S. blocked Estill from communicating via Facebook.

**{¶41}** Zahn's testimony further confirmed Estill's identity. He testified that his Axon search linked Estill to the phone number from which the messages were sent. This provided additional evidence that Estill sent the messages. The State therefore presented sufficient evidence that Estill sent the messages.

**{¶42}** As to the weight of the evidence, there is nothing to weigh. Estill did not testify, and no evidence suggested that she was not the sender of the messages. While credibility is always an issue, the trial court was in the best position to determine whether the witnesses were believable. *State v. January*, 2021-Ohio-3364, ¶ 9 (1st Dist.). The trial court believed A.S.

### 2. *"Abuse, Threaten, or Harass"*

**{¶43}** Estill next argues that the State presented insufficient evidence that the messages were sent with the intent to abuse, threaten, or harass. R.C. 2917.21(B)(1) prohibits a person from making a telecommunication "with purpose to abuse, threaten, or harass another person." This element requires proof that the defendant acted with the purpose to cause alarm or substantial emotional distress, not just mere annoyance. *Powell*, 2020-Ohio-4283, at ¶ 17 (1st Dist.). In the absence of more direct evidence, the purpose element may be established by the facts and circumstances surrounding the communication. *Id.* at ¶ 18. "Although a violation of the statute does not require multiple communications, the fact that a defendant sent numerous communications is often indicative of the defendant's specific purpose to harass." *Id.* at ¶ 19, citing *State v. Harshbarger*, 2010-Ohio-4413, ¶ 19 (3d Dist.).

**{¶44}** Estill sent multiple messages to A.S. on June 9, 2025 that are indicative of her purpose. Looking to the messages themselves, the first text exchange said, "That

14

baby might not live," and "The gift is these hands." A.S. testified that she interpreted the phrase "[t]he gift is these hands" to be a threat of physical assault, and she believed the language about her baby to be threatening in nature. She added that she believed the threats because a pattern of online harassment "predicts action in the future." More than a mere annoyance, the repeated messages alarmed A.S. and made her fearful that Estill would harm her and her unborn child.

{¶45} Viewing the evidence in the light most favorable to the State, A.S.'s testimony and the messages themselves are sufficient to prove that Estill acted with the requisite statutory purpose. *See Powell* at ¶ 18-19. Estill's conviction was not against the manifest weight of the evidence, as there was no contradictory evidence to weigh as to some other purpose for the messages.

{¶46} Because Estill's conviction was supported by sufficient evidence and was not against the manifest weight of the evidence, we overrule her third assignment of error.

### *Conclusion*

{¶47} Because the trial court did not commit plain error in admitting hearsay or "other acts" testimony, and because it did not abuse its discretion in admitting the State's exhibits, we overrule Estill's first assignment of error. Because Estill did not prove that her counsel was ineffective, we overrule her second assignment of error. Finally, because Estill's conviction was supported by sufficient evidence and was not against the manifest weight of the evidence, we overrule her third assignment of error. We affirm the judgment of the trial court.

Judgment affirmed.

CROUSE and BOCK, JJ., concur.