[Cite as *State v. Neal*, 2022-Ohio-1290.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210166 |
| | | TRIAL NO. B-180074-B |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| ROBERT EARL NEAL, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:   Affirmed in Part, Sentences Vacated in Part, and
Cause Remanded

Date of Judgment Entry on Appeal: April 20, 2022


*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Sean M. Donovan,*
Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Rubenstein & Thurman, L.P.A.*, and *Scott A. Rubenstein*, for Defendant-Appellant.

**MYERS, Presiding Judge.**

{¶1} Following a bench trial, the trial court found defendant-appellant Robert Earl Neal guilty of murder and having a weapon while under a disability, rejecting Neal's claim that he shot Anthony Harris in self-defense. On appeal, Neal challenges the weight and sufficiency of the evidence supporting his murder conviction, the trial court's admission of certain evidence over his objection, and its failure to merge allied offenses of similar import for sentencing. We vacate Neal's sentences in part and affirm the trial court's judgment in all other respects.

### Background Facts and Procedure

{¶2} At around 3:30 in the morning of January 24, 2018, Neal, John Jenkins, Deoveon Riggins, Markell Harris ("Markell"), and Devin Goley stopped for gas and other items at the VP[1] Racing Fuels gas station in Cincinnati. While some of them were still in the store, Anthony Harris ("Harris") parked at a pump near the store entrance and entered the store to buy snacks, as he typically did on his way home from his third-shift job.

{¶3} Neal and his friends returned to their car, and then Harris finished making his purchases and got back into his car. According to Jenkins, Neal told his friends that he would be right back and that he was going to "holler at dude." At the time, Neal had a loaded Smith & Wesson 9 mm handgun with a red-laser sight in the pocket of his hoodie sweatshirt. Jenkins testified that he was sitting in the back seat rolling a marijuana blunt when he heard three gunshots. Jenkins said that Neal then came back to their car, telling them to, "Go, go, go."

{¶4} Referring to Harris, Jenkins testified, "And that's when we seen the person, the victim's head. He was dead. * * * In his car." Jenkins said that Neal told

---

[1] The gas station is referred to as "VP" and "BP" in the record.

him that he thought he "had a lick. And the dude didn't have nothing." According to Jenkins, Neal said he shot the victim because the victim had blown smoke in his face.

{¶5} Riggins was unable to start their car at first, so Neal, Markell, and Goley ran away. After the car started, Riggins and Jenkins picked up Neal and the others a few blocks away. They drove straight to Akron, Ohio, where Neal, Jenkins, and Markell had family.

{¶6} Surveillance videos from the gas station showed that Harris left the store with his purchases and got into his car. Then as Harris raised his hand to his face, Neal approached him, leaned into Harris's partially opened driver's window, and extended his right hand inside the car. After several seconds, a cloud of smoke emanated from inside the car, and then Neal returned to his friends' car.

{¶7} Police arrived within minutes of the shooting and found Harris dead in his car, his right elbow resting on the closed center console between the front seats and his right hand resting on his right thigh. An officer testified that there was a black pistol lying on the front passenger seat of Harris's car, which was difficult to see because of the dark interior of the car. Photographs taken by a criminalist at the scene showed that the pistol's barrel was partially concealed by a piece of paper, a portion of which was under a McDonald's bag. Other debris on the passenger seat included three empty soda cans, a cell phone, and a small cigar package. A criminalist testified that he had looked through the driver's side window into the car several times but had never spotted the pistol on the passenger seat until someone else told him it was there. Police found three baggies of marijuana inside the closed center console.

{¶8} An officer recognized Riggins from the surveillance video, and a search of Riggins's Facebook page led police to Neal's Facebook page. A video posted on Neal's Facebook page prior to the shooting showed Neal wearing the same distinctive hoodie that he was wearing in the surveillance videos the night of the shooting. Another video, posted to Neal's Facebook page the day after the shooting, showed him

3

handling the Smith & Wesson handgun used in the shooting, and a Facebook chat showed that Neal offered the same handgun for trade, about nine days after the shooting. Fingerprints from Neal's left hand were found on Harris's driver's window. A review of cell tower records showed that Neal's phone left Cincinnati at the time of the shooting and traveled to Akron.

{¶9} On February 8, 2018, about two weeks after Harris was killed, Neal was arrested at an Akron apartment. Police found Neal's Smith & Wesson handgun in a bedroom. Testing revealed Neal's handgun to be the weapon used to kill Harris.

{¶10} An autopsy revealed that Harris sustained three gunshot wounds: to his left cheek, to the left side of his chest, and to his left arm with a reentrance wound of his torso. The coroner testified that the muzzle of the gun had been in contact with Harris's cheek at the time that the gunshot wound to the cheek occurred.

{¶11} In his defense, Neal argued that he acted in self-defense. He testified that he went into the store, but left while some of his friends were still inside. He said he went back to their car and began smoking a cigar. When the others returned to the car, Riggins and Jenkins got into the car, Goley talked on his phone, and Markell pumped gas. Neal said that he left his friends' car to buy more cigars from the store when Harris called him over to his car and asked if he wanted to buy some weed. Neal said that he leaned into the car to see the offered weed when he noticed that Harris had a gun pointed at his face. Neal said that he thought Harris was going to shoot him, so he reached into his hoodie pocket and wrapped his hand around the back of his own gun with his finger on the trigger. Neal said that he did not want Harris to realize that he was reaching for a gun because he felt like if he moved too quickly, Harris would shoot him. Neal said that, rather than run away, he shot Harris three times because he thought Harris was going to shoot him. Neal testified that when his friends asked him what happened, he was too upset to talk about it.

{¶12}   Neal admitted that he lied to detectives about not owning a phone, not having a Facebook account, and never having been to Cincinnati, saying that he did so because murder carried a life sentence and he did not think anything he said to the detectives would help him.   Neal acknowledged that he did not tell detectives that he had acted in self-defense when he shot Harris because he did not think that Ohio had such a defense.

{¶13}   On cross-examination, Neal demonstrated how Harris had been holding a gun in his right hand.   The trial court noted, "Let the record reflect that I see Mr. [Neal] with his right hand on his lap next to his crotch on his lap[.]"   When Neal was asked, "So based on your testimony, it wasn't in your face, there wasn't a gun in your face?," Neal replied, "I mean in the window so, technically, yes, that's my face."   When Neal was asked if he was being robbed by Harris, Neal replied, "I don't know.  I didn't wait that long to find out."   Neal could not remember if Harris had threatened him.   Neal said he slowly reached for his own gun, "pulled it out and stuck it in the car," and "pulled the trigger three times."   He said that he refused to talk about it on the drive to Akron:  "I didn't want to admit that I went over there and seen a gun and got scared and shot somebody."

{¶14}   Neal and Riggins were charged in a 12-count indictment.   Neal was charged in counts seven through twelve as follows:

Count Seven:  Murder in violation of R.C. 2903.02(A);

Count Eight:  Murder in violation of R.C. 2903.02(B);

Count Nine:  Felonious Assault in violation of R.C. 2903.11(A)(1);

Count Ten:  Felonious Assault in violation of R.C. 2903.11(A)(2);

Count Eleven:  Having a Weapon While Under a Disability in violation of R.C. 2923.13(A)(3);

Count Twelve: Having a Weapon While Under a Disability in violation of R.C. 2923.13(A)(2).

Each of counts eight through ten carried accompanying firearm specifications.

{¶15} Following a bench trial, Neal was found guilty on each count. At sentencing, the court determined that counts seven, eight, nine, and ten (the murder and felonious-assault counts) merged for sentencing purposes and that counts eleven and twelve (the weapon-under-disability counts) merged for sentencing purposes. Because the prosecutor elected to pursue sentencing on the murder charged in count seven, the court entered a final conviction and sentence on count seven, the accompanying three-year firearm specification, and count eleven. The court imposed an indefinite term of 15 years to life in prison on count seven, along with the mandatory three-year term on the firearm specification (to be served prior to and consecutively to the 15-years-to-life term), and 36 months on count eleven. The court ordered the sentence on count eleven to run concurrently to the sentence on count seven, for an aggregate prison term of 18 years to life. However, as the state concedes, the court's sentencing entry did not accurately reflect the sentence announced in open court, which we discuss in relation to Neal's fourth assignment of error.

### Weight and Sufficiency

{¶16} In his first and second assignments of error, Neal argues that his murder conviction was not supported by the weight and sufficiency of the evidence because he acted in self-defense. He does not argue that the state failed to produce evidence on all the essential elements of murder contained in R.C. 2903.02(A). Rather, he asserts that the state failed to disprove his claim that he shot and killed Harris in self-defense. Neal raises no challenge to the evidence supporting his weapon-under-disability conviction.

{¶17} In reviewing a challenge to the weight of the evidence, we must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541

(1997). In reviewing the sufficiency of the evidence, we must determine whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶18} The elements of self-defense in the use of deadly force are: (1) the defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such a danger was in the use of such force; and (3) the defendant did not violate any duty to retreat or avoid the danger. *State v. Smith*, 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976, ¶ 48, citing *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002). The elements of self-defense are cumulative, so a defendant's self-defense claim fails if any one of the elements is not present. *Id.*, citing *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 73.

{¶19} Under R.C. 2901.05, if there is evidence presented at trial that tends to support that the defendant used force against another in self-defense, the state must prove beyond a reasonable doubt that the defendant did not use the force in self-defense. R.C. 2901.05(B)(1). Once the initial showing is made, the burden of persuasion requires the state to disprove at least one of the elements of self-defense beyond a reasonable doubt. *Smith* at ¶ 49, citing *State v. Petway*, 2020-Ohio-3848, 156 N.E.3d 467, ¶ 55 (3d Dist.), and *State v. Carney*, 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶ 31. However, the burden of production remains with the defendant, so the defendant has "[t]he burden of going forward with the evidence of an affirmative defense." *State v. Williams*, 1st Dist. Hamilton No. C-190380, 2020-

Ohio-5245, ¶ 7, quoting R.C. 2901.05(A). So the burden of persuasion does not fall to the state until the defendant first meets his burden of production. *Id.*

**{¶20}** To meet the burden of production, the defendant must produce evidence that, "when viewed in the light most favorable to the defendant, is sufficient to cast a reasonable doubt as to guilt." *State v. Parrish*, 1st Dist. Hamilton No. C-190379, 2020-Ohio-4807, ¶ 14, citing *State v. Melchior*, 56 Ohio St.2d 15, 381 N.E.2d 195 (1978), paragraph one of the syllabus. "If the evidence generates only a mere speculation or possible doubt, [such] evidence is insufficient to raise the affirmative defense, and submission of the issue to the [trier of fact] will be unwarranted." *State v. Davidson-Dixon*, 2021-Ohio-1485, 170 N.E.3d 557, ¶ 20 (8th Dist.), quoting *Melchior* at 20.

**{¶21}** The state argues that Neal did not meet his burden of production to show that he used deadly force in self-defense, but Neal's assertion that Harris pointed a gun in his face, which caused him to act in self-defense, was supported by evidence that Harris had a gun within his reach. Because Neal's testimony, whether credible or not, must be viewed in the light most favorable to him, Neal met his burden of production. So the burden of persuasion fell on the state to disprove one of the elements of self-defense. We find that it did so.

**{¶22}** Neal asserts that he was not at fault in creating the situation leading to Harris's death because he was lured to Harris's car under the guise of being offered marijuana for sale. However, the state presented evidence that Neal approached Harris to rob him, held a gun to Harris's cheek and fired three times, and shot him because Harris had blown smoke at him. A detective testified that it appeared from the surveillance video that as Neal approached Harris, Harris raised a lit cigarette or cigar toward his face, and that the smoke that soon emanated from the driver's window was consistent with a person's smoking and was not consistent with gun smoke. Viewing the evidence in the light most favorable to the state, the trier of fact may

reasonably have found that Neal was at fault for creating the situation leading to Harris's death because Neal tried to rob Harris at gunpoint and shot him after having smoke blown in his face.

**{¶23}** Next, Neal argues that he was in imminent danger of death or great bodily harm because Harris's gun was inches from his face. However, after viewing the evidence in the light most favorable to the state, the trier of fact may reasonably have concluded that Neal's belief was not objectively reasonable because Harris's gun was found on the passenger seat, partially covered by a piece of paper, on the opposite side of the raised center console between the front seats. A reasonable trier of fact may have found it unlikely that after being shot point-blank in the face and twice in the body, Harris then lifted his gun from his lap and over the raised center console, dropped his gun onto the passenger seat, partially covered it with a piece of paper, and then moved his right hand back over the console to rest on his thigh, before succumbing to his wounds. In addition, the trier of fact may have rejected as not worthy of belief Neal's testimony that he had seen Harris's gun, because a police officer and a criminalist testified that it was difficult to see the gun on the passenger seat from the driver's window, and photographs showed other debris on the seat.

**{¶24}** Neal also argues that he had no other means of escape and that deadly force was his only option. With respect to the duty to retreat, "in most cases, 'a person may not kill in self-defense if he has available a reasonable means of retreat from the confrontation.'" *State v. Morgan*, 1st Dist. Hamilton No. C-160495, 2017-Ohio-7489, ¶ 36, quoting *State v. Thomas*, 77 Ohio St.3d 323, 326, 673 N.E.2d 1339 (1997). Here, after viewing the evidence in the light most favorable to the state, a reasonable trier of fact could have found that Neal violated a duty to retreat when he shot someone who was not pointing a gun at him.

**{¶25}** Neal argues that the only evidence that contradicted his own version of the events was Jenkins's testimony, which he asserts was not believable. And there

was evidence that challenged Jenkins's credibility. Jenkins testified that in the days leading up to Harris's death, he had been in Cincinnati selling drugs and hanging out with Neal and the others. He admitted that he had been convicted of several felonies, had previously served three prison terms, and at the time of Neal's murder trial was facing felony trafficking and weapons charges in Summit County, Ohio. He said that the prosecutor and police had made him no promises with respect to his testifying against Neal, and that he hoped for "consideration" on his pending charges in the form of a lighter sentence. He admitted that when he was first interviewed by police about Harris's death, he lied to them and told them that Neal never talked about what happened. The trial court was in the best position to weigh the credibility of the witnesses and was free to believe or disbelieve Jenkins's testimony.

{¶26} Neal also argues that Jenkins's testimony was not supported by the evidence and should not have been believed, specifically Jenkins's testimony that Neal said he shot Harris because Harris had blown smoke in his face. Neal argues that the puff of smoke seen in the video did not emanate from Harris, as would support Jenkins's testimony about Neal's stated reason for killing Harris, but came from Neal's fired gun. In support of his argument, Neal points to the absence of smoked cigarettes, blunts, or butts in Harris's car.

{¶27} On the other hand, the detective testified that on the surveillance video, it looked as if Harris was raising a lit cigar or cigarette to his mouth before Neal approached him and that it appeared to him that the emitted smoke was not consistent with gun smoke but more consistent with a person's smoking. The criminalist also testified that there were ashes and a cigar package on the passenger seat. Contrary to Neal's assertions, there was enough evidence upon which the trier of fact could have concluded that Jenkins's testimony about Neal's stated reason for shooting Harris was credible and supported by other evidence. The trial court, as the trier of fact, was in

the best position to judge the credibility of the witnesses, and was free to disbelieve Neal's claim that he shot Harris in self-defense.

{¶28} Because the state disproved at least one element of self-defense beyond a reasonable doubt, Neal's murder conviction was based on sufficient evidence. After our review of the record, we cannot say that the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned. Consequently, we overrule the first and second assignments of error.

### Admission of Evidence

{¶29} In his third assignment of error, Neal argues that the trial court erred by failing to exclude evidence under Evid.R. 403(A) where its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the trier of fact. Specifically, he challenges the court's admission of certain evidence from his Facebook page. A trial court has broad discretion over the admission or exclusion of evidence, and we will not reverse a trial court's ruling on evidentiary issues in the absence of an abuse of discretion and proof of material prejudice. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 181.

{¶30} Exclusion of relevant evidence under Evid.R. 403(A) "requires more than mere prejudice, because anything adverse to a party's case could be deemed prejudicial to that party." *State v. Worley*, 164 Ohio St.3d 589, 2021-Ohio-2207, 174 N.E.3d 754, ¶ 125. The rule requires exclusion only of unfairly prejudicial evidence, which the Supreme Court of Ohio has defined as "that quality of evidence which might result in an improper basis for a jury decision," such as where "the evidence arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish[.]" *Id.*, quoting *Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169, 172, 743 N.E.2d 890 (2001).

{¶31} "Even in a jury trial, this is a difficult standard to meet, and broad discretion is vested in the trial judge." *State v. Bays*, 87 Ohio St.3d 15, 28, 716 N.E.2d 1126 (1999) (rejecting a claim that counsel was ineffective for failing to object under Evid.R. 403(A) because counsel could reasonably assume that the judges would be unaffected by any inflammatory material). Because this was a bench trial, we presume that the trial court did not consider improper evidence in reaching its verdict. *State v. Arnold*, 147 Ohio St.3d 138, 2016-Ohio-1595, 62 N.E.3d 153, ¶ 39. Rather, "we presume that the court considered only 'relevant, material and competent evidence' unless the record affirmatively discloses otherwise." *State v. Pennington*, 1st Dist. Hamilton Nos. C-170199 and C-170200, 2018-Ohio-3640, ¶ 46, quoting *State v. Post*, 32 Ohio St.3d 380, 384, 513 N.E.2d 754 (1987).

{¶32} The trial court admitted records from Neal's Facebook account that included a chat that occurred the week after Harris's death, discussing Neal's offer of a Smith & Wesson 9 mm handgun "with a beam" (laser sight) for trade and a photo of the weapon. The evidence was probative of Neal's possession of the weapon used to kill Harris and his attempt to get rid of it before he was arrested.

{¶33} The court admitted a video posted to Neal's Facebook page that showed Neal sitting in a car as he and others watched drivers doing donuts in a snow-covered parking lot, and showed Neal wearing the same distinctive clothing that he wore at the time of the shooting. The evidence was probative of Neal's identity as the shooter seen in the gas station videos, an element that the state was required to prove.

{¶34} The court admitted a video posted to Neal's Facebook page the day after the shooting that showed Neal and the same four friends at an Akron apartment, some of them still wearing clothing from the night before. The video showed Neal handling the weapon used to kill Harris and others holding handguns, in the presence of children. The trial court overruled a defense objection to the video, stating, "While I

do believe there could be some prejudice showing other illegal acts in the video, I think it's outweighed by the probative value showing the defendant with the firearm."

**{¶35}** Neal has failed to demonstrate that Evid.R. 403(A) required exclusion of the Facebook chat and videos: the evidence was probative of Neal's identity, his possession of the weapon used to kill Harris, and his attempt to get rid of the weapon, and the record contains no indication that the evidence aroused in the trial court such passion, sympathy, horror, or instinct to punish so as to be unfairly prejudicial. Therefore, the court did not abuse its discretion in admitting the evidence. We overrule the third assignment of error.

### Sentencing

**{¶36}** As stated above, the trial court found that the murder counts and felonious-assault counts merged for sentencing, and, of those four counts, it imposed sentence on only the murder in count seven. However, the sentencing entry reflected sentences were also imposed on counts eight (murder), nine (felonious assault), and ten (felonious assault). In his fourth assignment of error, Neal argues that the trial court erred when its sentencing entry failed to merge the murder and felonious-assault counts and imposed sentence on all four counts, and the state concedes the error. Therefore, we sustain the assignment of error. We vacate the sentences on counts eight, nine, and ten, and remand the case for the trial court to enter an order that reflects the sentence announced in open court. The judgment of the trial court is otherwise affirmed.

Judgment affirmed in part, sentences vacated in part, and cause remanded.

**BERGERON** and **CROUSE, JJ.,** concur.

Please note:

The court has recorded its own entry this date.

13