[Cite as *State v. Bell*, 2023-Ohio-1010.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210494 |
| | | TRIAL NO. B-1803675 |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| MARKUS A. BELL, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 29, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Keith Sauter*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Derek W. Gustafson*, for Defendant-Appellant.

**BERGERON, Judge.**

{¶1}   A repudiated handshake launched an argument that ultimately ended with the death of one victim and serious injury of a second.  Defendant-appellant Markus Bell was thereafter convicted of murder, felonious assault, tampering with evidence, and having weapons under disability following a jury trial.  On appeal, Mr. Bell claims that he was denied his right to effective assistance of counsel through cumulative error and that the trial court committed plain error in instructing the jury in connection with his self-defense claim.  However, as explained in further detail below, Mr. Bell does not carry the burden of establishing ineffective assistance of counsel based on the extant record.  Nor can we say that the jury instructions constituted plain error.  Accordingly, we overrule both of Mr. Bell's assignments of error and affirm the judgment below.

I.

{¶2}   In June 2018, victims Shawn Kelley, Jr., ("Son") and his father, Shawn Kelley, Sr., ("Father"), walked toward the building where Mr. Bell lived with his mother.  Son and Mr. Bell had a contentious history including a recent spat when Son declined to shake Mr. Bell's hand, and Father hoped to speak with Mr. Bell and his mother—an old friend of his—to prevent the dispute from escalating.  As the Kelleys approached the building, Mr. Bell emerged from the front door.  Mr. Bell complained to Father that Son would not shake his hand, and this slight really bothered him.  Father tried to calm him down, telling Mr. Bell that his son did not need to shake anyone's hand.  Throughout this interaction, Father continued to call out for Mr. Bell's mother, believing that she could help defuse the situation.

2

{¶3} After a while, according to Father's testimony, the situation began to simmer down. However, a friend of Mr. Bell's began to agitate the matter, prodding Son and Mr. Bell to fight. Son agreed, and then Mr. Bell (unexpectedly, at least to the Kelleys) pulled out a gun. He pulled the trigger once, but the gun did not discharge. At this point, Father stepped toward Mr. Bell to try to stop him from shooting again. But as Father moved toward him, Mr. Bell managed to shoot multiple rounds, hitting Father in his leg and also shooting Son.

{¶4} Father testified that his son urged him to get up and began to run away. He did not realize at this point that his son had been shot. Father and Son ran to the nearby fire station to seek medical assistance.

{¶5} Father was rushed to the hospital, where he was treated for a gunshot wound to the leg. After multiple surgeries, doctors informed him that his leg would never fully recover. While in the hospital, Father learned that his son had succumbed to his wounds.

{¶6} Father also testified that neither he nor his son had a weapon that day and that he had not been aggressive toward Mr. Bell (indeed, he sought to deescalate matters). But Mr. Bell testified—consistent with his self-defense theory—that he fired as the Kelleys approached him while he was backing away. He believed that they would attack him, bolstered by Son's agreement to engage in a fight.

{¶7} The state eventually indicted Mr. Bell for one count of murder, one count of felony murder, two counts of felonious assault, one count of tampering with evidence, and one count of having a weapon while under disability (due to prior felony convictions for burglary and drug-related offenses). During a lengthy pretrial stretch, the court twice found Mr. Bell incompetent to stand trial and sent him to two

3

psychiatric facilities for treatment. In February 2021, however, the court concluded that he was competent to stand trial, and the case proceeded to trial. A jury convicted Mr. Bell of all charges, and the court imposed an aggregate prison term of 32 years to life. He now appeals this judgment, presenting two assignments of error.

II.

{¶8} In his first assignment of error, Mr. Bell maintains that he was denied his right to counsel based upon the ineffective representation of his trial counsel. According to Mr. Bell, the failures of counsel permeated all stages of the proceedings, and considered cumulatively, they operated to deny him his constitutional right to counsel.

{¶9} "In criminal proceedings, a defendant has the right to effective assistance of counsel under both the United States and Ohio Constitutions." *State v. Evick*, 12th Dist. Clinton No. CA2019-05-010, 2020-Ohio-3072, ¶ 45, citing the Sixth Amendment to the United States Constitution, and Article I, Section 10, Ohio Constitution. In reviewing an ineffective assistance of counsel claim, we consider "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). An appellant must demonstrate that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Id.* at 687. To show prejudice, an appellant "must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989). And "[t]o justify a finding of ineffective assistance of counsel, the appellant must overcome a strong presumption that, under

4

the circumstances, the challenged action might be considered sound trial strategy." *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995), citing *Strickland* at 689. It is often difficult for a defendant to prevail on an ineffective assistance claim on direct review (as in this case) because courts cannot stray outside of the trial record to evaluate the ineffective assistance claim (which can happen during postconviction review).

{¶10} Mr. Bell concedes that the cited failings of counsel may seem inconsequential when considered individually, but asserts that these perceived errors, taken together, rise to the level of cumulative error necessitating reversal. However, as we explain in greater detail below, we disagree.

{¶11} To set some context, everyone acknowledged at trial that Mr. Bell shot the Kelleys. In other words, Mr. Bell's defense necessarily centered on self-defense. As part of his self-defense claim, defense counsel cross-examined Father on whether he or his son provoked Mr. Bell into shooting, cross-examined other witnesses on whether they observed the Kelleys acting aggressively toward Mr. Bell, and explained the theory and facts giving rise to the self-defense claim during closing argument. Trial counsel called an expert witness to testify that Son's toxicology screen revealed methamphetamines in his system, which can cause a user to act aggressively. And trial counsel called Mr. Bell himself to testify on his own behalf to share the narrative of how and why he acted defensively.

{¶12} Based on the evidence at hand, the trial court provided jury instructions that conveyed the elements of self-defense to the jury. While there are certainly things that counsel could have done to *better* advance Mr. Bell's defense, the record does not support the conclusion that, had counsel performed optimally, a reasonable

probability exists that the outcome of the proceedings would have differed. *See Bradley*, 42 Ohio St.3d at 143, 538 N.E.2d 373. We proceed to address each of Mr. Bell's arguments in turn.

A.

{¶13} First, Mr. Bell argues that trial counsel failed to sufficiently investigate his mental health status. In this respect, he emphasizes the court's prior determinations of incompetency, and posits that trial counsel should have done more to challenge his competency in the wake of the trial court's subsequent finding of competency.

{¶14} But in February 2021, Dr. Charles Lee, an expert at Summit Behavioral Healthcare who assessed Mr. Bell's competency, concluded in his expert report that Mr. Bell understood the charges against him and the potential penalties he faced, as well as the roles of the various participants in the courtroom. Against this backdrop, we cannot say that the record establishes that trial counsel rendered ineffective assistance in failing to further investigate his mental condition. It appears that counsel fully explored the competency issues below, and nothing in the record hints at any deficiencies in counsel's performance after receipt of Dr. Lee's report. Given Dr. Lee's report, Mr. Bell merely speculates that another expert would have reached a different conclusion, and "[i]t is well established that mere speculation cannot support either the deficient performance or prejudice requirement of an ineffective-assistance claim." *State v. Morgan*, 2d Dist. Montgomery No. 27774, 2018-Ohio-3198, ¶ 16, citing *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 119. We accordingly cannot say that trial counsel was ineffective in this regard.

6

B.

{¶15} Second, Mr. Bell alleges that counsel fell below the *Strickland* standard during voir dire by failing to adequately question a number of jurors and failing to exercise all of his peremptory challenges. In this regard, he identifies certain jurors who held positive views of law enforcement, jurors who questioned whether they would be good jurors, a juror who had been threatened with a gun in the past, and two jurors who expressed misconceptions about the legal concept of self-defense, arguing that these jurors' potential biases were not sufficiently explored during voir dire.

{¶16} At the same time, the prosecution questioned the jurors about some of these issues, and the jurors generally assured the court that they could put aside their personal feelings and assess the case on the merits. The jurors agreed to be fair and impartial to both parties, and agreed that the verdict they reached would be based solely upon facts of the case. To be sure, we can certainly imagine that some defense counsel would have exercised peremptory challenges in this scenario. But generally, "[d]ecisions on the exercise of peremptory challenges are a part of trial strategy * * *." *State v. Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, 90 N.E.3d 857, ¶ 73, quoting *State v. Goodwin*, 84 Ohio St.3d 331, 341, 703 N.E.2d 1251 (1999).

{¶17} Mr. Bell counters that his lawyer stated, on the record, that Mr. Bell did not want him to exercise the peremptory challenges. In other words, he frames counsel's acquiescence to his client's wishes under these circumstances to be tantamount to abdication and relinquishment of the lawyer's role. The trial record, however, discloses nothing of the strategic calculus (or lack thereof) evaluated by trial counsel with respect to the venire, and thus we see nothing that would take this decision out of the realm of trial strategy. On the record at hand, we cannot say that

trial counsel's performance fell below an objective standard of reasonable representation with respect to voir dire.

C.

{¶18} Next, Mr. Bell asserts that counsel proved ineffective in failing to substantively advance his self-defense claim during opening statement. During opening statement, counsel failed to articulate any theory justifying Mr. Bell's use of force, but rather generally asserted that the jury should consider why he may have resorted to shooting the Kelleys. That "why," revealed during trial, was a claim of self-defense.

{¶19} While it may have been advantageous for counsel to delineate the self-defense claim in opening statement, we fail to see from the record that this prejudiced Mr. Bell or that there is a reasonable probability that this affected the outcome of his trial. As explained above, counsel thoroughly pursued the self-defense claim through cross-examination of witnesses and the surviving victim, the testimony of an expert witness, the testimony of Mr. Bell himself, and the trial court's instructions on the matter. And counsel ultimately tied all of these threads together during closing argument. We can certainly imagine a better opening statement, but it is possible that counsel may have wanted to see how the evidence unfolded at trial before jumping in with both feet on self-defense. And "[s]imply because there might have been 'another and better strategy available' does not mean that counsel provided ineffective assistance." *State v. Blanton*, 2d Dist. Montgomery No. 29451, 2023-Ohio-89, ¶ 71, quoting *State v. Mohamed*, 151 Ohio St.3d 320, 2017-Ohio-7468, 88 N.E.3d 935, ¶ 19, and *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980).

D.

**{¶20}** Mr. Bell also takes issue with trial counsel's failure to object at various points throughout his trial. He first highlights counsel's failure to object to certain leading questions. But besides Mr. Bell's failure to attempt to explain how he was prejudiced by the questions, "it is within the trial court's discretion to allow leading questions on direct examination. * * * Therefore, [the Ohio Supreme Court does] not find that the failure to object to any leading questions constitutes ineffective assistance of counsel." *State v. Jackson*, 92 Ohio St.3d 436, 449, 751 N.E.2d 946 (2001). On this record, we see nothing that could rise to the level of ineffective assistance based on the leading questions identified in Mr. Bell's brief.

**{¶21}** Mr. Bell also argues that counsel should have objected to coroner Dr. Stephens's comment regarding her opinion that Son was shot a second time while turning away from Mr. Bell, as well as her statement, "I think [Son] was probably thinking I had better get out of here." But the comment that Son was shot while he was turning away was based on the autopsy conducted by Dr. Stephens, so an objection to this statement may well have been overruled. And while the latter statement regarding Son's thoughts certainly trespassed (improperly) on the speculative realm, we cannot say that a failure to object here translates into ineffective assistance.

**{¶22}** Finally, Mr. Bell maintains that counsel should have objected to certain comments made by the prosecutor. Mr. Bell testified on direct examination that Father said "we are not here for [bystander]" before the shooting, presumably implying that Father suggested that he and Son were instead there to confront Mr. Bell. During cross examination, the prosecutor incorrectly stated that Mr. Bell did not previously testify to that. But Mr. Bell does not attempt to explain how counsel's

failure to object to this statement prejudiced him or, to a degree of reasonable probability, affected the outcome of his trial. And Mr. Bell contends that the state mischaracterized his testimony regarding his disposal of the gun after the shooting. But in fact, during direct examination, he stated that he threw his gun into the sewer, and then later changed his story. Accordingly, it was not ineffective assistance for trial counsel to fail to object to these statements.

{¶23} Mr. Bell is also concerned that trial counsel did not object when the state suggested during voir dire and again during its opening statement that the burden of proof rested on the defense. But the prosecutor's statement during voir dire clarified that the trial court would give the definition of a self-defense claim, and the trial court gave a clear and comprehensive instruction on self-defense, placing the burden of proof on the state, so this misstatement failed to prejudice Mr. Bell. And while the prosecution's statement during opening that self-defense is an affirmative defense is an incorrect statement of the law to which trial counsel should have objected, again, the jury was properly instructed on the elements of self-defense and the burden of proof. Accordingly, Mr. Bell fails to persuade us that there exists a reasonable probability that, were it not for counsel's errors with respect to failing to raise objections at various points throughout trial, the result of his trial would have been different.

E.

{¶24} Mr. Bell proceeds to assert that counsel failed to cross-examine certain witnesses about whether they knew his motive in shooting at the Kelleys. This, according to Mr. Bell, represents a lack of preparation and effort by trial counsel.

**{¶25}** It would appear that Mr. Bell had hoped that trial counsel's cross-examination of state witnesses would further advance his self-defense claim. He takes issue with the fact that counsel never cross-examined these witnesses on whether they knew why Mr. Bell shot at the Kelleys. But once again, trial counsel adequately advanced Mr. Bell's self-defense claim through various other methods. And asking witnesses to speculate on his state of mind would not have been proper (a point we just alluded to above). *See State v. Blanton*, 4th Dist. Adams No. 16CA1031, 2018-Ohio-1275, ¶ 21 ("Ohio law specifically precludes questions that require a witness to speculate or guess about the thoughts of another."). Moreover, some of the identified witnesses, including police officers, testified that they arrived at the scene after the shooting, and therefore were not qualified to speak on whether it appeared that Mr. Bell acted consistent with self-defense. Overall, cross-examination of witnesses generally falls well within the zone of trial strategy, and Mr. Bell has not established that counsel's approach to cross-examination of the witnesses in this case constituted ineffective assistance.

F.

**{¶26}** In addition, Mr. Bell complains that trial counsel did not present medical records to corroborate his testimony that he had been shot in the past and suffered serious wounds, rendering him more concerned about threats than the average person. These records would have undoubtedly provided additional substantiation for Mr. Bell's self-defense claim, but because counsel pursued other methods of advancing this claim, and the jury was aware that Mr. Bell had been shot in the past and thus was more sensitive, the decision not to present these records was not substantially prejudicial.

{¶27} Along these same lines, Mr. Bell questioned why counsel did not call his appointed expert, Dr. Weisman, to testify regarding his determination that Mr. Bell suffered from a trauma/stress related disorder. In his report, Dr. Weisman opined that Mr. Bell suffered from a psychotic spectrum disorder as well as a trauma or stress related disorder. He also noted that, due to being shot in 2017, Mr. Bell experienced hypervigilance and an exaggerated startle response, among other effects.

{¶28} And again, while Dr. Weisman certainly would have added some credibility to Mr. Bell's self-defense claim, trial counsel's failure to call him as a witness does not rise to the level of prejudicing the defense so as to deprive Mr. Bell of a fair trial, *see Strickland*, 466 U.S. at 687, 104 S.Ct. 2052, 80 L.E.2d 674, and we cannot say there exists a reasonable probability that his testimony would have affected the verdict.

G.

{¶29} Paralleling his argument regarding trial counsel's opening statement, Mr. Bell also takes aim at counsel's closing argument. Specifically, he notes that trial counsel failed to mention in closing the state's burden to disprove self-defense, that a good-faith mistaken belief of great bodily harm is sufficient to warrant the use of self-defense, and that the jury must put themselves in Mr. Bell's position with his characteristics, knowledge, and circumstances.

{¶30} However, as discussed above when considering potential deficiencies in trial counsel's opening statement, counsel presented expert testimony, utilized cross-examination of witnesses, and elicited Mr. Bell's own narrative of how he endeavored to defend himself to promote the self-defense claim throughout trial. And the trial court gave jury instructions explaining the elements of a self-defense claim as well as

the state's burden of proof. The jurors knew that the burden of proof rested on the state and were otherwise apprised of the elements of a self-defense claim. Accordingly, we cannot say that there exists a reasonable probability that the outcome of the trial would have been different had trial counsel mentioned the details of the elements of a self-defense claim during closing argument, so we do not find that counsel was ineffective in this regard.

### H.

**{¶31}** Finally, Mr. Bell takes aim at trial counsel's failure to object to the trial court's jury instructions on fault and retreat. This issue is also featured in his second assignment of error. However, as we discuss in further detail below, because these instructions correctly encapsulated the law, Mr. Bell's argument that counsel's failure to object to the instructions amounted to deficient performance that prejudiced him is merely speculative.

**{¶32}** While the Ohio Supreme Court does recognize that individual errors, when considered together, can result in ineffective assistance of counsel, *State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, 172 N.E.3d 841, ¶ 169, in this case, we cannot say that counsel's claimed deficiencies, taken together, rose to the level of reversible error. Having reviewed each of his arguments in turn and weighed their cumulative effect, we must conclude that Mr. Bell has not carried the burden of establishing that counsel's performance was deficient and prejudiced his substantial rights on the state of this record. *See Strickland*, 446 U.S. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. Therefore, Mr. Bell has not demonstrated that he was denied his right to the effective assistance of counsel, and we overrule his first assignment of error.

13

III.

**{¶33}** In his second assignment of error, Mr. Bell claims that the trial court committed plain error in issuing certain jury instructions. Specifically, he maintains that the trial court's instructions on self-defense were not supported by the evidence in two instances.

**{¶34}** "A trial court should confine its instructions to the jury to the issues raised by the pleadings and the evidence." *Southside River-Rail Terminal Inc. v. Crum & Forster Underwriters*, 157 Ohio App.3d 325, 2004-Ohio-2723, 811 N.E.2d 150, ¶ 53 (1st Dist.). Generally, "[i]n reviewing a jury charge, an appellate court must first consider whether the instruction was a misstatement of the law, and if so, whether the erroneous instruction probably misled the jury." *Id.* But here, because Mr. Bell did not object to the jury instructions at trial, we review his claim only for plain error. *See State v. Love*, 2017-Ohio-8960, 101 N.E.3d 623, ¶ 20 (1st Dist.) (where defendant "failed to object to the jury instructions and consequently * * * forfeited all but plain error"). "To establish plain error pursuant to Crim.R. 52(B), [the defendant] must show '(1) that an error occurred, (2) that the error was obvious, and (3) that the error affected the outcome of the trial.' " *Id.*, quoting *State v. Bandy*, 1st Dist. Hamilton No. C-160402, 2017-Ohio-5593, ¶ 70. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Love* at ¶ 20, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶35}** With respect to fault, the trial court gave the following instructions:

The defendant was at fault if the defendant was the initial aggressor and:

Shawn Kelley, Jr. did not escalate the incident to great bodily force or

14

deadly force; or the defendant provoked Shawn Kelley, Jr. into using force; or the defendant did not withdraw from the incident; or the defendant withdrew from the incident but did not reasonably indicate by words or acts to Shawn Kelley, Jr. of his withdrawal.

* * *

To prove that the defendant, when using deadly force, did not act in self defense, the State must prove beyond a reasonable doubt at least one of the following: The defendant was at fault in creating the situation giving rise to the gunshot wound of Shawn Kelley, Sr., * * *.

{¶36} And with respect to retreat, the trial court instructed, in two instances: "The defendant had a duty to retreat if he was in a place which he had no lawful right to be. The defendant had no duty to retreat if he was in a place which he had a lawful right to be."

{¶37} The trial court drew these jury instructions nearly verbatim from the provisional Ohio Jury Instructions section on self-defense. *See Ohio Jury Instructions* CR Section 421.21 (Rev. Nov. 5, 2022). The instructions represent correct statements of the law pursuant to applicable case law and R.C. Chapter 2901. R.C. 2901.05 shifts the burden to the state "to disprove self-defense involving deadly force by proving beyond a reasonable doubt that the defendant (1) was at fault in creating the situation giving rise to the affray; or (2) did not have a bone fide belief that [he] was in imminent danger of death or great bodily harm for which the use of deadly force was [his] only means of escape, or (3) violated a duty to retreat or avoid the danger[,]" *State v. Smith*, 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976, ¶ 50, so the jury instructions in

15

this case properly explained how the state could meet its burden of proving beyond a reasonable doubt that Mr. Bell did not shoot the Kelleys in self-defense. As to the fault instruction specifically, recent precedent from this court notes that one element of self-defense in the use of deadly force is that "the defendant was not at fault in creating the situation giving rise to the affray * * *." *State v. Neal*, 1st Dist. Hamilton No. C-210166, 2022-Ohio-1290, ¶ 18. And with respect to the duty to retreat instruction, pursuant to R.C. 2901.09, "a person has no duty to retreat before using force in self-defense * * * if that person is in a place in which the person lawfully has a right to be." R.C. 2901.09(B). The trial court so instructed.

**{¶38}** Mr. Bell responds that even if the instructions correctly captured the law, no evidence in the record (1) suggests that he was at fault, or (2) indicates that he did not have a right to be where the shooting occurred. But this fact-specific objection to the instructions is difficult for us to evaluate on appeal—such matters should have been presented to the trial court for it to consider. And we can compare the situation at hand to that in *State v. Wallace-Lee*, 2d Dist. Greene No. 2019-CA-19, 2020-Ohio-3681, ¶ 26. In *Wallace-Lee*, the defendant argued that it was not appropriate for the trial court to give a fault instruction "because the evidence, in [defendant's] view, showed she was not at fault." *Id.* But applying a plain error review, the Second District rejected the defendant's argument because "the instruction tracked the language used in persuasive case law, and * * * there was a legitimate question regarding [defendant's] fault in initiating the fight[.]" *Id.* The court also noted that defendant "cannot show that the 'at fault' definition provided by the trial court caused the jury to reject [defendant's] claim of self-defense[.]" *Id.* Similarly, here, the instructions

16

tracked the language found in relevant case law and we cannot say there was no question regarding Mr. Bell's fault.  On this record, we do not see plain error.

\*       \*       \*

**{¶39}** In light of the foregoing analysis, we overrule both of Mr. Bell's assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**CROUSE, P.J.,** and **BOCK, J.,** concur.


Please note:

The court has recorded its entry on the date of the release of this opinion.